PETER BELL, ET AL., *vs.* WILLIAM WEBB AND PETER MONG.—*December,* 1844.

On the 1st February 1820, *B.* being in debt on judgment, executed a mortgage of his lands to *C.*, to secure him a sum due on bond. On the 29th of the same month, he executed a *second* mortgage of his lands and personal property to *W.* and *M.*, who were his sureties; and for their indemnity. On the 27th July following he executed a *deed of trust* for the property mentioned in the second mortgage, to the same grantees. The trust was to sell the property, as speedily as it could be done without a sacrifice, and pay 1st, all liens and incumbrances according to their priority; and 2nd, all judgments obtained against, debts or liabilities undertaken by, *W.* and *M.* for the said *B.* The personal property, which was under execution, was sold and so applied. The land was not sold until October 1821. HELD:

1st. That as the trustees were not obliged to sell at a sacrifice, by the terms of the deed, the depressed price of lands furnished a sufficient justification to them for forbearing the sale for the time they did forbear.

2nd. That at the sale of the land, which was by virtue of an execution, the purchaser was, in fact, an agent of one of the trustees.

3rd. A trustee who purchases the trust property, which had been previously levied on, at the sheriff's sale under the writ, being guilty of no fraudulent conduct to depress the price, will be entitled to re-imbursement of his expenditures, but cannot deprive the *c. q. t.* of the benefit of his purchase.

4th. The circumstance of the trustee having an interest coupled with his trust, as for the satisfaction of his own claims, does not dispense with the

equity, that all his acts should enure in equal proportions to the benefit of others according to the extent of their claims, as well as to himself.

Where a *c. q. t.* attended the sale of trust property, under an execution, by a judgment creditor of the grantor of the fund, was requested to bid and did not; nor did he express any dissatisfaction therewith, but it did not appear that, he then, or at any subsequent time until the filing of his bill, had any notice or knowledge, that his trustee, through an agent, was the purchaser, there is no ground to impute acquiescence in the sale, though eighteen years had elapsed.

In such a case, the sale is voidable at the election of the *c. q. t.* The land remaining in the possession of the trustee, at the institution of the suit, may be sold, and the purchase money, after allowing the trustee all the money by him paid and applied to the purposes of the trust, and also for all necessary and proper expenditures upon the land, and permanent improvements thereon, over and above its profits, shall be applied to the purposes of the trust.

APPEAL from the Equity side of *Washington* County Court.

The bill, in this cause, was filed on the 13th October 1839, by *Peter, Daniel,* and *Frederick Bell,* of, &c., children and administrators of *Frederick Bell,* late of *Washington* county, deceased, and alleged, that on or about the 1st February 1820, *Daniel Berger* being seized in fee of the lands, &c., hereinafter mentioned, proposed to mortgage the same to the said *Frederick Bell,* deceased, to secure a certain claim which the said deceased at that time, had against the said *Daniel Berger;* and the said *Berger* affirmed the said premises to be free from all prior incumbrances; that on said 1st February 1820, the said *Daniel Berger,* executed and delivered to their said deceased father, a deed of mortgage for the said lands and tenements, reciting, among other things, that "whereas the said *Daniel Berger,* by his bond or obligation, bearing even date with these presents, stands bound unto the said *Frederick Bell,* his, &c., in the sum of $1402.60, with condition thereto written, for the payment of $701.30, with legal interest from the 1st March next, ensuing the date, &c." And the said *Daniel Berger,* by said deed, for and in consideration of the said recited debt, as well as, &c., did grant, &c., unto the said mortgagee and to his heirs, &c., a certain part of a tract of land called "*Huckleberry Hall,*" containing, &c.; and a

certain tract of land, called "*Kysers Inheritance*," containing, &c. And the said deed contained a condition, or proviso, thereto annexed, that if the said *Daniel Berger* should pay the said $701.30, on or before the first day of March, ensuing the date of said deed, the same should be void, otherwise, to remain in full force and virtue in law; all of which will more fully appear, &c.; that the said sum of $701.30, was not paid to your orators' deceased father in his lifetime, or any person on his account, nor to your orators, or any person on their account, since his decease, according to the said provisions in the said deed and bond mentioned, whereby the said deed of mortgage became forfeited, &c. But now, so it is, the said *Daniel Berger*, combining and confederating with a certain *Wm. Webb*, and a certain *Peter Mong*, and divers other persons, whose names are hereinafter mentioned, and made parties hereto, and others, &c., to injure and aggrieve your orators' deceased father, in his lifetime, and your orators since his death; and to deprive them of the said sum of money, and the interest thereon, give out and pretend, that the said *Daniel Berger*, in his lifetime, executed a certain other deed of mortgage to the said *William Webb* and *Peter Mong*, of the same property, to secure them in the manner therein set forth and recited; which the said *Webb* and *Mong*, claim as a prior lien, or incumbrance, on the said property, which said deed is dated, the 29th February 1820. And, that the said *Daniel Berger* executed a certain other deed, or conveyance, in trust, of the same property, for the purposes therein mentioned, to the said *William Webb* and *Peter Mong*, which said deed is dated, the 27th July 1820. That the said *William Webb* and *Peter Mong*, under the authority given them by said deed of trust, pretended to convey the said property to *Marmaduke W. Boyd*, by deed, dated the 24th January 1824, for the trifling consideration of one thousand and ten dollars; that all the said conveyances were only part of a scheme and contrivance, to defeat the just claim of your orators' deceased father, who was not familiar with matters of law, and was prevented prosecuting his claim against said property, by the intricate entanglement of the

same; that the said *Marmaduke W. Boyd*, the nominal gran-
tee in said deed, never took possession of said property, and
does not appear ever to have enjoyed any benefit under the
said last mentioned deed; but the same was, in fact, a mere
contrivance of said *Mong*, or said *Webb* and *Mong*, to protect
themselves, or the said *Mong*, in the possession and enjoyment
of said property, which he, the said *Mong*, appears to have
had, and the proceeds thereof, since 1820, till the present
time; and to defeat the claim of your orators' deceased father.

And, the said *Mong*, still confederating with the said *Daniel
Berger*, notwithstanding the deed, he, the said *Mong*, had pre-
viously, in conjunction with the said *Wm. Webb*, as the trustees
aforesaid, pretended to make to *Marmaduke W. Boyd*, and the
legal title thereby conveyed to said *Boyd*, (if the said *Webb* and
*Mong* could convey the same,) he, the said *Peter Mong*, took
another deed of the same property from the said *Daniel Berger*,
dated the 13th February 1828; the said *Berger* not having
had any reconveyance of said property. All of which will
more fully appear, by reference to the said deeds, each and
every of which, your orators pray, may be taken as part of
this bill. And your orators aver, that, if the said deeds were
in fact made *bona fide*, and for good and valuable considera-
tion, of which they charge to be fact, the mortgage of your
orators' deceased father has the priority of date, and is, there-
fore, entitled to be fully satisfied out of the said property. Your
orators' further allege, that under the deed of trust of the said
*Daniel Berger* to the said *Wm. Webb* and *Peter Mong*, dated
27th July 1820, there was a large and valuable personal pro-
perty, conveyed to *Wm. Webb* and *Peter Mong*, along with the
property herein before mentioned; and, also, another small
tract of land, containing one and one-fourth acre; all of which
both personal and real property, were conveyed to satisfy the
trusts therein mentioned, and to pay off all encumbrances on
the property; that, in said deed, were recited certain judg-
ments against, and other liabilities of *Daniel Berger;* but the
more effectually to perplex and defeat the claim of your orators'
deceased father, it is not mentioned, though created only a few

months before the date of said deed, that the judgments, which they pretended to make liens on the property, amounted only to about the sum of $2000, which the personal property would have been sufficient to satisfy, if a faithful account had been rendered of the same; and a fund might have been raised from the sale of the real property, more than sufficient to pay off the mortgage of your orators' deceased father. But your orators charge, that the said judgments had not a prior claim upon said property to the said mortgage, or if they had, they have since been discharged. Yet the said *Wm. Webb* and *Peter Mong*, have neglected to settle any account of the real and personal estate, so conveyed, in trust, and to pay off the incumbrances, according to the directions of the deed, and the trusts conferred upon and assumed by them. And your orators charge, that the said *Peter Mong*, since the deed of *Daniel Berger* to him, dated the 13th February 1828, has taken upon himself the exclusive control and disposition of said property, and has sold parts thereof to divers persons, to wit, &c.; shewing the great value of said property, and the fraudulent and insufficient consideration pretended to have been paid for the whole property, all of which is of equal value, conveyed or pretended to be conveyed under the deed of trust, aforesaid; which will more fully, and at large appear, by reference to said last mentioned deeds; all of which are made parts of this bill. And your orators further shew, that the said *Daniel Berger* died in this county, in or about the year 1833, or 1834, insolvent, and without any personal property to administer upon; that there was no administration, and that, consequently, your orators claim, or any part of it, was never satisfied; that the said *Daniel Berger* left children, to wit, &c.

Prayer, that the said *Wm. Webb*, *Peter Mong*, *Marmaduke W. Boyd*, and other parties, defendants hereto, may set forth and show, what other right, title, interest, or claim, they, or any of them, may have in said property; that the said *Peter Mong*, or the said *Wm. Webb* and *Peter Mong*, and the other parties, holding the said lands according to their proportions, if there be not a sufficient quantity still in the possession of

said *Peter Mong*, may be decreed to pay and satisfy to your orators the said sum of, &c.; and, in default thereof, that the said parties hereto, and all persons claiming or to claim under them, may be foreclosed of, and from, all equity of redemption, &c.; and the same, or so much as may be required, may be decreed to satisfy the mortgage held by your orators; and, if it be necessary and proper, that the said *Wm. Webb* and *Peter Mong*, may be decreed to settle their trust under the direction of this honorable court, and that the claim of your orators may be decreed thereby to be satisfied; and that your orators may have such other, and further relief, as, &c.; of subpœna, &c.

The defendants, the trustees, appeared and answered the bill. The nature, character and extent of that answer; the exhibits filed by both parties; and the testimony, sufficiently appear in the opinion of this court.

On the 24th December 1842, Washington county court, setting as a court of equity, dismissed the bill with costs, and the complainants prosecuted this appeal.

The cause was argued before ARCHER, DORSEY, CHAMBERS, STONE and SEMMES, J.

By SPENCER for the appellant, and
By PRICE for the appellees.

ARCHER, J., delivered the opinion of this court.

*Daniel Berger*, being largely indebted on judgments obtained against him in *Washington* county court, executed to the complainant, on the 1st of February 1820, a mortgage on his lands to secure the payment of $701.30; and on the 29th of February, executed a deed of mortgage to *William Webb* and *Peter Mong*, for his said lands and personal property. In this deed, it is recited, that *Berger* was in debt to sundry persons in the sum of $6000; and that *Webb* and *Mong* were his securities, and that the deed is executed to secure them the payment thereof; and subsequently, on 27th July 1820, he executed a deed of trust for the said lands and personal property in trust, to sell the same as speedily as it could be done, without a sacrifice,

for the purpose of paying off, first, all the liens and incumbrances according to their priority. Secondly, for paying off all judgments, and debts, and liabilities, obtained against, or undertaken by the grantees, on account, and for the said *Berger*, &c.

The answer states, that the personal property, which was under execution, sold on 2nd November 1820, for near $600, and was applied to payment of the executions which covered it. That the trustees offered the lands for sale, and could get no bid for them, owing to the depressed prices of land at that time. That the judgment creditors became impatient, issued executions, and the land was offered at sheriff's sale on 3rd day of July 1821, and was subsequently sold by the sheriff under *vendies,* on the 21st of October 1821, to *Marmaduke W. Boyd* for $1010. That this sum was insufficient to pay the liens and judgments, prior to the complainants mortgage; that *Boyd* purchased the land, at the request of *Webb* and *Mong*, to aid them in getting out of the difficulties in which they were involved, by being connected with the concerns of *Berger*. That after said purchase, they conveyed to *Boyd* all the interest they had in the land, to enable *Boyd* to sell the lands, that the proceeds might be applied to their relief; but *Boyd* being unable to sell, *Mong* agreed to purchase the land from *Boyd*, and paid him $1500 for the same, which sum covered all expenditures by *Boyd*, in the purchase, &c., of the land.

By the evidence, it is established, that *Mong* and *Webb* had offered the lands at private sale repeatedly; that lands were depressed in price very much at that time, and that within a year after the deed to them *fi. fas.* on those judgments were issued, and upon *vendies,* they were sold.

As the trustees were not obliged to sell at a sacrifice, by the terms of the trust, the depressed price of lands furnished a sufficient justification to them for forbearing the sale, for the time they did forbear.

There appears to be no evidence satisfactory to us, that there existed any combination between the trustees and the judgment creditors, to bring these lands to a sale.

We are, therefore, bound to consider, that no imputation can lie against the trustees on account of the executions.

It cannot however, we think, be doubted, that at the sheriff's sale, *Boyd* in the purchase, was the mere agent for *Mong*. This is evident, we think, as well from the facts disclosed in the answer, as from the testimony of *Mong* himself ; and one of the questions which arises in the case, is, whether a trustee can be permitted to purchase the *cestui que trusts* property, levied upon and sold at a sheriff's sale, without any instrumentality of his.    As decisive of this question, we refer to 7 *G. & J.* 1.    The trustee thus purchasing, will be entitled to re-imbursement for his expenditures in the purchase, but he cannot deprive the *cestui que trust* of the benefit arising from the purchase, if there be such benefit. 3 *Des.* 25.

But, it is supposed, that whatever may be the general rule on this subject, that in the case before us, there was a trust coupled, with an interest, which authorized the purchase for his own benefit.    The trustee had an interest in the satisfaction of his own claims, it is true, but equity would seem to demand, that all his acts, in relation to the trust property, should enure in equal proportions to the benefit of others, according to the extent of their claims, as well as to himself. This point seems to have been involved in 7 *Gill & John.* 2.

Another question is, whether the sale ought not to be considered, as ratified by long acquiescence; after a knowledge of the facts, which will impeach a sale, a party would be bound, in a reasonable time, to proceed, and if he do not, he will be presumed to have acquiesced.   Here a period of eighteen years has elapsed, from the sale to the filing of the bill; but as far as the records presented the case, it would appear to have been an ordinary sale to *Boyd*, by the sheriff, and it seems only to have been discovered at the filing of the answer, that *Boyd* had purchased for the trustee; so that the complainant proceeded upon this new state of the case to vacate the purchase immediately thereafter.    It is true, the complainant attended the sale, and was requested to bid, but declined, and did not express dissatisfaction therewith.    But it does not

appear, that he then, or at any subsequent time, until the institution of these proceedings, had any notice or knowledge that *Boyd* was purchasing for the trustee. We therefore think, there is no ground to impute any acquiescence to the complainant.

In view, therefore, of all the circumstances of the case, we are of opinion, that the sale thus made, is voidable, at the election of the complainant; and that the land described in the proceedings, and yet remaining, at the institution of this suit, in the possession of the defendant *Mong*, should be sold; and that the purchase money, after allowing to the defendant all the monies by him paid and applied, to the purposes of the trust, and also for all necessary and proper expenditures upon the land, and permanent improvements thereon, over and above the profits of said lands, shall be applied to the purposes of the deed of trust, made by *Berger*, on the 27th July 1820; and that the cause should be remanded, to the county court, that the principles of this decree may be carried into effect by further proceedings therein.

DECREE REVERSED.