BETHIA SPINDLER and others, *vs.* JOSHUA ATKIN-SON, Perm't Trustee of WM. C. SPINDLER.

A deed of property to a trustee, *in trust*, for the grantor's wife and children, was conceded to be fraudulent as against the creditors of the grantor, but the property was afterwards levied on and sold at sheriff's sale, under a judgment recovered against the grantor for a debt contracted prior to the date of the deed, and the trustee in the deed purchased the property at this sale. HELD :

That in the absence of fraud on the part of the trustee, in connection with the sheriff's sale, he had the right to purchase, and must be treated as the purchaser of the grantor's entire interest in the property, at the date of the deed.

It is immaterial whether he intended to buy for himself or for the purpose of quieting his title as trustee, because no matter what his intentions might be, the law will protect *cestui que trusts* from the acts of the trustee.

It is immaterial whether there was or was not fraud on the part of others, if the purchaser was innocent:   An innocent purchaser may acquire a good title, notwithstanding the fraud of others, for otherwise, no purchaser, at a judical sale, would be safe.

The deed being void as to creditors, the law, as to them, treats the property as if no such deed had been made, and hence the purchaser, under a judgment in favor of a creditor, takes all that the grantor owned in the property at the date of the deed.

If questions subsequently arise as to the *bona fides* of the deed, they must be settled between the purchaser and those claiming under it; the purchaser is substituted, by law, in the place of the judgment creditor.

As a general rule, a person who undertakes to act for another, cannot, in the same matter, act for himself; but it is not universally true, that a trustee cannot purchase the trust estate—circumstances may render it necessary, in order to protect the interest of the *cestui que trusts*.

A trustee may purchase the trust property, levied upon and sold at sheriff's sale without any instrumentality of his, and will be entitled to reimbursement for his expenditures in the purchase, but he cannot deprive the *cestui que trusts* of the benefit arising from the purchase, if there be such benefit.

In this case, though the trustee could purchase, yet he must hold for the benefit of the *cestui que trusts*, and the deed being vacated at the instance of creditors, who are, therefore, entitled to relief against the *cestui que trusts*, the interest of the latter must enure to the benefit of such creditors.

APPEAL from the Court of Chancery.

The bill in this case was filed on the 5th of March 1846, by the appellee, as permanent trustee of William C. Spindler, an insolvent debtor, to vacate certain conveyances of the insolvent as fraudulent against creditors.

The bill states, that Spindler being largely indebted and possessed of no property, except that embraced in the deeds attacked, with intent to delay, hinder and defraud his creditors, conveyed, on the 27th of March 1834, all his real estate in the city and county of Baltimore, to James Philips, senior, upon a pretended consideration of ten dollars, *in trust*, for Bethia Spindler, his wife, for life, with power to dispose of the same during his life, with his consent, then, *in trust*, for their children; and if she should die leaving no children, and Spindler should survive her, then, *in trust*, for him, for life, and then to his right heirs. That on the 18th of April following, twenty-two days thereafter, Spindler, with the same fraudulent intent, executed a bill of sale to Philips, upon a pretended consideration of $3500, but which, in fact, was never paid, of all his household and kitchen furniture. That afterwards, on the 13th of January 1835, Spindler being the assignee of a judgment in the case of *Garrett vs. Manro*, with the same fraudulent intent, entered the same to the use of Hugh Birckhead, who had large commercial dealings with

Philips, and who, on the 27th of June following, received, on account thereof, $361.96, and on the 11th of January, $387.98, both of which sums he passed to the credit of Philips, who was, in fact, the assignee of said judgment, the name of Birckhead being used to conceal the fraudulent intent, neither Philips or Birckhead having paid any consideration for said assignment.

The bill then states, that shortly after the execution of the deed of trust to Philips, the General Insurance Company of Maryland sued Spindler, who, at September term following, confessed judgment for $500, with interest from the 2nd of February 1834; and being then advised that the deeds he had executed were fraudulent and void, he contrived another plan to hinder, delay and defraud his creditors and retain his property to himself and family, in furtherance whereof, he made an arrangement with said company, by which he paid, or agreed to pay them, not only said judgment, but all other sums due by him to them, and that the property should be set up for sale under an execution on said judgment, and bought in by some friend in the name of Philips, for the use of Spindler and his family. That in pursuance of such arrangement, on the 17th of October of the same year, (1834,) an execution was issued and levied on the property described in the deed of trust to Philips, and that in Baltimore county appraised, under the levy, at $9900, was sold by the sheriff, on the 16th of December of the same year, and bought in the name of Philips for $250, and the sheriff executed a deed to Philips for the same. That the property in the city of Baltimore was appraised at $4000, and sold by the sheriff under the same execution, on the 22nd of January 1835, and bought by Philips for $3800, and the sheriff executed a deed to him for it. That at the sale of the city property, the counsel of Philips, who was also the counsel for Spindler, exhibited the deed of trust to Philips, and forewarned all persons from purchasing, and thereby prevented *bona fide* bidders, who would have given the full value for the property, from bidding as they intended, and the reason the price bid by Philips'

agent was so near the appraised value was, that one of the creditors of Spindler bid for the same nearly to that amount, he being the only bidder except said agent. That from a period prior to the execution of the deed of trust to him, up to the 15th of January 1835, Philips was absent from the country, and had no knowledge of these transactions, but his name was used by Spindler to carry out his fraudulent intentions, and that Philips, after his return, assented to the conveyances and aided in sustaining them. That Spindler and his family have always been, and are now, in the full possession and enjoyment of all said property, in the same manner as before said conveyances and contrivances were made and executed. That Spindler, after this and without having incurred any further liabilities than those existing at the date of said deeds, on the 8th of February 1837, applied for the benefit of the insolvent laws, and did not include, in his schedule of property, that embraced by said deeds, and that complainant was duly appointed his permanent trustee, and that out of the assets returned by Spindler, he has been able to collect only $262.50, and is in no hopes of getting more. That Spindler and wife, at the time said deed of trust was executed, had one child, Eleanor E. Spindler, an infant, now living, and have had no other. That Philips claims the whole of said property, as conveyed to him as aforesaid. The bill then specially interrogates Philips and Spindler as to the matters therein charged, and prays that said conveyances may be set aside and the property decreed to be sold; and Philips and Spindler decreed to bring into court the difference between the price which the personalty may now produce, and the value of the same at the date of the bill of sale; and that Philips may be decreed to bring into court the sums received on the judgment against Manro; and that an account may be taken of the annual value of the rents and profits of the real estate; and the proceeds of sale and the money so brought in or accounted for, may be paid over to the complainant, to be distributed by him in insolvency and for general relief.

The infant defendant answered, by her guardian, *ad litem*, that she did not admit the truth of the charges in the bill, and prayed the court to protect her interests in the premises.

The answer of *Philips* states, that on the 27th of March 1834, Spindler, his son-in-law, being worth, as he believed, much more than all his debts, and moved by a prudent desire to guard his wife and children against any future chances of want, executed to him, Philips, the deed of that date mentioned in the bill, but expressly denies that it was executed for the purpose of defrauding creditors or any other unfair purpose, so far as he had any knowledge of the circumstances; and that he firmly believes that Spindler, at the date of this deed, was worth, of other property, three times the amount of all he owed. He admits that the real estate, named in the deed, was taken in execution by the insurance company, upon a judgment recovered, as he presumes, for a debt actually due by Spindler, but he knows nothing of the time when it was recovered, or when the execution issued. The charges of confederacy and combination with Spindler he denies as being gratuitous and false, and he denies all other charges of confederacy and fraud. He admits that, by his counsel, he purchased the property at sheriff's sale, paid the sheriff the purchase money and got his deeds. He states that he knew that Spindler had an interest in said property by the terms of the deed of trust, which interest he supposed was liable for his debts, and he, Philips, wished to quiet his own right by becoming possessed of whatever interest in said property was fairly liable to sale under the execution. He admits that, by his counsel, he produced the deed at the sheriff's sale and informed the public of its execution and contents, and in so doing, conceived he was but discharging his duty; also that he has permitted his daughter to reside in the house in town, and enjoy the rents of the property in the county since his purchase, but that this has only been by verbal permission. He denies that he ever had any conversation with the insurance company's officers or agents in regard to the judgment or sale. He admits that Spindler applied for

and received the benefit of the insolvent laws, but as he was then absent from the country, he can state nothing concerning the application. He denies the whole statement of the bill as to the Manro judgment as untrue and without a shadow of foundation. As to the bill of sale he avers, that Spindler received from him the full amount of the consideration therein mentioned, and admits that he has permitted his daughter to use the property since, and in conclusion, pleads the statute of limitations.

The answer of *Spindler and wife* admits the execution of the deed and bill of sale, but denies that they were made to hinder and defraud creditors, or in contemplation of insolvency, but avers that they were *bona fide* and for the considerations expressed on the face of them; that Spindler, at the time, was in a large and prosperous business, and worth more than four times the amount of his debts, over and above said property; that the deed was executed with a view to secure a provision for his family, in the event of adversity in business, at a time when it was not only justifiable, but prudent and laudable so to do. It denies the assignment of the Manro judgment to Birckhead. Admits the judgment by the insurance company, but denies all collusion therein; and admits the levy and sale, but denies that it took place with Spindler's consent or concurrence. Admits the purchase by Philips at sheriff's sale, and the sheriff's deeds, but denies that the proceeding by the company was instigated by him to defraud his creditors or for any purpose, or that he made the arrangement with said company charged in the bill. Admits that Philips has permitted his daughter to remain in possession and enjoyment of the property since the sale. Admits his application for the insolvent laws, and the appointment of complainant as his permanent trustee, and that they have but one child, Eleanor E. Spindler, an infant. The respondent, Bethia, has no personal knowledge of the matters charged in the bill, but she insists that the deed for her benefit is valid and good, and prays the court to protect her interests. To the special interrogatories Spindler answers,

that Philips paid him, personally, the whole sum of $3500, mentioned as the consideration of the bill of sale, he does not remember the precise date, but that it has never been repaid or agreed to be repaid, and that the furniture has been left by Philips in the possession of his daughter. That he never assigned the Manro judgment to any one, but himself received the money thereon long before he applied for the benefit of the insolvent laws, and in conclusion, pleads the statute of limitations.

The answer of Philips having been excepted to and the exceptions sustained, he filed a further answer, in which he states, that for the purchase of the town property he paid in person to the sheriff $3800 in cash, on the 22nd of January 1835, and that no part of it has ever been returned to him, and there is not and never was any agreement that it should be returned to him. That the farm property was sold during his absence from the country, and was purchased for him by his counsel or agent, and duly paid for by said agent, on or about the day of sale, out of the money of respondent. That this purchase was made to perfect respondent's title, and received his hearty sanction, and that the purchase money has never been returned to him, nor has there been any agreement made to repay him the same. That he was absent from the country from a period prior to the 27th of March 1834, to the 15th of January 1835. That the consideration of the bill of sale was paid by him to Spindler, by advances from time to time, and by a claim for board of Spindler and his family, furnished by Philips. That Spindler was, in addition, at the time of his death and long before, largely indebted to respondent.

A supplemental bill was afterwards filed, stating the death and intestacy of Spindler, the marriage of the infant defendant, Eleanor E. Spindler, also the death of Philips, leaving a will, devising a part of the property mentioned in trust for certain purposes mentioned in the will. The proper parties were accordingly made defendants and answered.

The testimony was all taken on the part of the complain-

ants. That portion of it which tended to prove the insolvency of Spindler at the date of the execution of the deed of trust to Philips, need not be stated, as the *fact of such insolvency* was admitted by the counsel for the appellant in his argument. As to the other matters in controversy, *Henry S. Sanderson* states, that he was sheriff in 1833 and 1834, and sold the property in Baltimore county, on the 17th of December 1834, for $250, which he on that day paid over to William H. Gatchell, the counsel for the insurance company. That he sold the property in Baltimore, on the 21st of January 1835, for $3800, and on the 22nd of the same month, he paid to Gatchell the balance due on the execution of the insurance company, and the residue of the money, after satisfying said execution and costs, he paid to the counsel for Spindler. *Francis H. Smith* testifies, that he was the secretary of the insurance company in January 1835; that Spindler, at that time, was indebted to that company to the amount of $1000 on his several notes, which debt was paid at different times and in different sums; on the 17th of December 1834, $400, and on the 23rd of January 1835, $642, being the balance of principal and interest. He thinks these payments were made by Glenn or Gatchell, the counsel for the company, in whose hands the notes were placed for collection. *William H. Gatchell* was counsel for the insurance company in their suit against Spindler. He never saw the deed of trust, but had heard and believed there was such a deed; he intended to sell whatever interest Spindler might possibly have, and to contest the validity of the deed should it become necessary. In answer to an interrogatory, whether he had any recollection of any agreement made with Spindler, or any one for him, in relation to said property, by which the debt to the insurance company was to be secured, and to explain how he paid the insurance company $400 on the 17th of December 1834, though he had then received from the sheriff under the execution but $200? and how, on the 23rd of January 1835, he paid said company $642 on account of their claim against Spindler, though the suit and execution were but for $500,

with interest? He answers, that he has no recollection of any such agreement having been made, though he will not say that such an one was not made; that the payments mentioned in the latter part of the interrogatory seem to be inconsistent with any other theory than of such an agreement.

The complainants filed also as evidence under the commission, the deed of trust and bill of sale attacked by the bill; the sheriff's deeds to Philips for the property sold to him, and a copy of said Philips' will, by which he devised the farm in the county and the house in the city, to Hugh Birckhead and John W. Richardson, *in trust* first, to apply the rents and profits to the payment of a debt of $1670, which he, the testator, owed to said Hugh Birckhead, then *in trust* to pay over the proceeds and profits to his daughter, the said Bethia Spindler, during her life, and to the said William C. Spindler for life, in case he should survive her, then to their children and their heirs, and in default of children, to the heirs at law of the testator in fee.

The defendants excepted to so much of the testimony of *Gatchell* in answer to the interrogatory proposed, as does not rest in his recollection, upon the ground that the opinions and inferences of the witness are not admissible in evidence, and to the said interrogatory as leading and in other respects objectionable. The complainants then waived that part of the prayer for relief, which seeks an account from the parties in possession of the property in controversy.

The chancellor (JOHNSON) decreed the deed of trust, bill of sale, and the deeds from the sheriff to Philips, to be null and void as against the creditors of Spindler, and vested the property thereby conveyed in the complainant, as his permanent trustee, to be by him administered in insolvency, and that the defendants pay the costs of suit. His opinion accompanying this decree is reported in 1 *Md. Ch. Decisions*, 507. The defendants appealed from this decree, so far as it sets aside and declares void all the deeds of property mentioned in the proceedings, except the deed or bill of sale of personal

chattels, dated the 18th of April 1834, and also so far as it decrees them to pay costs to the complainant.

The cause was argued before LE GRAND, C. J., ECCLE-STON and TUCK, J.

*John Nelson* for the appellants.

The only appeal is from that part of the decree which annuls the deeds of the real estate. I admit that the proof shows that Spindler was insolvent at the time he executed the deed of the 27th of March 1834, and that this deed was voluntary, so as to render it void at common law or under the statute of *Elizabeth*, as against creditors, but insist, that the sale and conveyance made by the sheriff of Baltimore county to James Philips, Sr., invested him with a complete title to the property in controversy. This sale was made to recover a debt contracted before the fraudulent deed, as against which that deed was void. Now suppose another person had bought at the sheriff's sale, would not his title have been good? 17 *Conn.*, 493, *Owen vs. Dixon*. 11 *G. & J.*, 37, *Waters vs. Duvall*. 7 *Blackford*, 66, *Scott vs. Purcell*. 4 *Wash. C. C. Rep.*, 129, *Ridgeway vs. Underwood*.

If the title of the purchaser be good, is there anything in this case to prevent the application of the rule contained in the authorities above cited? I admit that collusion between Philips and the insurance company, the plaintiffs in the judgment, would defeat his title, but of this there is no title of proof, except that of *Gatchell*, which is excepted to, as well as the interrogatory to which he answers, and which *assumes* the payment of more than the purchase money as a fact. This is not proved. Smith does not prove by whom the money was paid. The answers expressly deny all allegations of fraud in this sale. It was a *judicial* sale, the public were present, the property sold for nearly its appraised value, and the sheriff executed his deeds for it.

This is not a case between Philips and the *cestui que trusts* under the deed, but it is one where creditors have sold, and

It is said a third party cannot buy, because he happens to be the trustee under the deed. Could not Philips have bought at a trustee's sale under a decree vacating this deed? Why not, if there be no fraud? Philips had no participation in these transactions until January 1835, for up to that period he was absent from the country. He had no connection with these deeds and his statements are to be taken favorably, because he was speaking upon information derived from his son-in-law. There is not a single fact to show that the purchase at the sheriff's sale was made in fraud. There is no importance to be attached to the showing of the deed at the sale, because it was recorded. The chancellor goes upon the ground, that Spindler had an interest under the deed which *alone* could be sold, but this is not so, Spindler's entire right to the property was sold and purchased by Philips

*Dobbin* and *McMahon* for the appellees, made the following points:

1st. That the trustee in insolvency is the proper party to file the bill to vacate the deed of the insolvent for fraud. 1 *Md. Rep.*, 455, *Waters vs. Dashiel.*

2nd. That the deed of the 27th of March 1834, is fraudulent and void against the trustee. 5 *Gill*, 449, 457, 460, *Worthington vs. Shipley.* 5 *G. & J.*, 455, *Birely vs. Staley.*

3rd. That the deed being void for fraud, the sale by the sheriff to Philips, the grantee under the fraudulent deed, gives no title to the property against the trustee. 3 *Mason*, 388, *Randall vs. Philips.* 1 *Watts and Searg.*, 299, *Foulk vs. McFarlane.* 2 *Watts*, 66, *Gilbert vs. Hoffman.*

They argued that the deeds were void for *fraud in fact.* Fraud cannot be presumed, but facts must be offered from which it may be inferred. 5 *G. & J.*, 269, *Davis vs. Calvert.* If a design to cheat be proved, all the acts of the party may be construed with reference to that intent, and so of other parties cotemporaneously dealing with the party convicted of that intent. 2 *Peters*, 117.

Philips here is claiming under a false deed, by setting it up

at the sale.  The judgment to the insurance company was confessed, whilst other cases were pending against Spindler for nearly $16,000.  Philips' title can be good only on the supposition that the deed is void, yet he claims that the deed is good.  Can he do this?  He cannot set up a title inconsistent with the sheriff's deed.  6 H. & J., 61.  3 Mason, 388.  As against Spindler Philips had title under the deed, neither could say it was void.  The creditors' title is the right to say the deed was a nullity, and that the property remained in the grantor for their benefit.

By accepting the deed, Philips was trustee for Mrs. Spindler and her child, and he cannot place himself in an attitude antagonistic to the trust.  18 Johns. Rep., 317.  Suppose Philips were here as a purchaser asking to have the deed of trust vacated for fraud, would he be heard?  Can the grantee in a fraudulent deed go out into the market and acquire a title to defeat creditors?  Can a fraud be made good ex post facto?  Who is such a purchaser as can be protected? only a bona fide purchaser; bona fides in the sale is necessary, 2 Watts, 66.  1 Watts and Searg., 297.  1 Story's Eq., sec, 369.  4 Dev. and Bat., 285.

Tuck, J., delivered the opinion of this court.

The admissions at the bar, on the part of the appellants' counsel, have left only one of their points for our consideration, to wit: "Whether the sale and conveyance made by the sheriff to James Philips, invested him with a complete title to the property in controversy?" being that mentioned in the deed of 27th March 1834.

Upon this admission the appellee is entitled to relief as against the cestui que trusts in the deed, that instrument being fraudulent and void as against the creditors of the grantor.  But it is said that Philips occupied a different attitude after his purchases at the sheriff's sales; that the property having been seized and sold under judicial process, issued at the instance of the creditors of Spindler, who had a right to sell for the satisfaction of their judgment, Philips had as much

right to buy as any other person. This position is met on the part of the appellee by two objections:—*First*, it is contended that Philips was party to, or if not party to, must be affected by the alleged fraud and collusion, concocted for the purpose of bringing this property into market, to be sold to the prejudice of Spindler's other creditors; and *secondly*, that if he is not affected by this fraudulent arrangement, equity will not allow him to become the purchaser of property which he held in trust for others. Of these in their order.

For most of the time that these transactions were taking place Philips was abroad, and could have had no participation in them. He gave his sanction, on his return, to what his agent had done; but it does not necessarily follow from this that he was aware of any fraud in the acts of the parties. Nor do we find in the record such proof of fraud and collusion in bringing about the sheriff's sales, as to satisfy us that the judgment, execution and sales were not the act of the insurance company, uninfluenced by any solicitations or contrivances of those charged with the fraud.

There are circumstances of suspicion which, as against the other parties, might afford evidence of fraud in bringing about the sheriff's sales; but we cannot find the truth of this allegation as against Philips, when he was not in the country at the time, in opposition to the direct and positive denials in the answers, and in the absence of more positive proof on the subject. The sheriff proves that the property was sold in the usual way, and that the purchase money was paid at the time of the sales. Philips states that the purchases were made in good faith, and that the money paid was his own, of which no part has been refunded. If this were not true, a further examination of the sheriff might have traced the residue, after paying the judgment, to the hands of Philips, or his agent or attorney, and thus shown his participation in the fraud. It is difficult to believe that Philips would have made this purchase under the alleged fraudulent arrangement, and not have secured to himself, in some manner, the residue of this large sum, if it had been advanced by him merely in aid

of the fraud. His exhibiting the deed at the sale is relied upon as evidence of a fraudulent intent; but we do not think this by any means conclusive, especially if such conduct can be reconciled with another view of the case, not liable to the imputation of fraud. If he intended to maintain the validity of the deed of trust, it was proper that he should give notice of its existence, that purchasers might not afterwards allege, that he stood by and permitted them to make an improvident bargain. It is immaterial whether he designed to buy for himself, or for the purpose of quieting his title as trustee, (1 *Gill*, 493;) because no matter what his intention might be, the law will protect *cestui que trusts* against the acts of the trustee. It is alleged, also, that though making the purchase for, and taking the deeds to, himself, he has dealt with the property as trust estate, by allowing the family of Spindler to occupy and enjoy it, which is evidence that he designed to consummate the original fraud. Mrs. Spindler was his daughter, her husband soon after died, leaving his family in needy circumstances—fit objects of a father's care and protection. But when he made his will he dealt with it as his own, by charging it, to some extent, with his own debts, and devising it ultimately to his right heirs, instead of those of Spindler, who would be entitled under the deed. From these circumstances we may infer, that he did not buy the property for the purpose of carrying out the fraud. It is conceded that any other person might have purchased and taken a good title. Suppose such had been the case, and that the money had been paid to the sheriff, as in this case, and the balance, after satisfying the judgment, paid over to Spindler the defendant in the judgment, would the creditors have been in any better situation than they were the day on which Philips made the purchase? Surely not. If fraud was suspected, or if Spindler was insolvent, they might have proceeded against this surplus in the sheriff's hands; but could not have gone against the property in the hands of a *bona fide* purchaser. It is immaterial whether there is or is not fraud on the part of others if the purchaser be innocent. In such a case a good title may

be acquired, notwithstanding the fraud; for otherwise, no purchaser, at a judicial sale, would be safe—indeed few, if any, such sales would be made.

His honor, the Chancellor, in his opinion, does not consider the question of fraud as connected with the sheriff's sales. He treats the deeds as good *inter partes*, which is unquestionably correct, and as having divested Spindler of all interest in the property, except the contingent life estate reserved to him by the deed, and that when Philips purchased at the sheriff's sale, he acquired, and could acquire, nothing more than this contingent right, which, by the death of Spindler, no longer existed. 1 *Md. Ch. Dec.*, 515. If this view of the extent of the rights of creditors against the property of a fraudulent grantor be correct, then, even if there be no fraud in the sheriff's sale, Philips could have no interest in the present controversy. But in this we do not concur. Though such a deed be good as between the parties, it is void as against creditors, and the law, when dealing with the property in behalf of creditors, treats it as if no deed had been made; as to them it is no deed at all. The purchaser takes all that the grantor owned in the property at the time of the conveyance. If questions subsequently arise as to the *bona fides* of the deed, they must be settled between the purchaser and those claiming under it. The purchaser is substituted, by law, in the place of the judgment creditor. 17 *Conn.*, 492. 7 *Blackf.*, 66. 2 *Wharton*, 240. 4 *Wash. C. C. Rep.*, 129. 1 *Watts and Seargt.*, 297. 11 *Gill and Johns.*, 45. 1 *Md. Rep.*, 470. Assuming, therefore, that the deed of March 1834, is void as against Spindler's creditors, and that there was no fraud on the part of Philips in connection with the sheriff's sale, he must be treated as the purchaser of Spindler's entire interest in the property at the date of the deed of trust.

As to the second objection taken on the part of the appellee: The question here is not between Philips and those claiming under the deed as *cestui que trusts*, but between Philips and the creditors of the fraudulent grantor. The

general rule certainly is, that a person who undertakes to act for another, cannot, in the same matter, act for himself. But it is not universally true, that a trustee cannot purchase the trust estate. Circumstances may arise to render it necessary, in order to protect the interests of the *cestui que trusts*. Whether he will, after such sale, hold the property for himself or for others, is another question. In the case of *Bell vs. Webb and Mong*, 2 *Gill*, 170, the Court of Appeals said: "One of the questions in this case is, whether a trustee can be permitted to purchase the *cestui que trusts'* property levied upon and sold at a sheriff's sale, without any instrumentality of his? As decisive of this question, we refer to 7 *Gill and Johns.*, 1. The trustee thus purchasing will be entitled to reimbursement for his expenditures in the purchase, but he cannot deprive the *cestui que trusts* of the benefit arising from the purchase, if there be such benefit." See, also, *Mong vs. Bell*, 7 *Gill*, 244.

Upon these authorities we are of opinion, that though Philips could purchase, he could not have held the property for his own benefit. He was estopped from denying the validity of the deed of trust, although the creditors of Spindler might assail it; and when vacated at their instance, the interest of the *cestui que trusts* must enure to the benefit of the creditors. Philips will be allowed for his expenditures and improvements, but cannot be charged with the rents and profits, as in the case of *Bell vs. Mong*, because the complainant has waived that part of the relief claimed by his bill. Under these circumstances, however, we think that interest should not be allowed to him. Nor can we notice the personal property mentioned in the proceedings, inasmuch as no appeal was taken in reference thereto. Having expressed our views and pointed out wherein we differ from the chancellor, a decree will be signed accordingly.

*Decree reversed.*

The decree of the court passed in this case, after reversing the decree of the chancellor with costs, proceeds as follows:

"And this court proceeding to pass such decree in the premises, as the court of chancery ought to have passed, it is further adjudged, ordered and decreed, that the property mentioned in the deed of the 27th of March 1834, be sold by the appellee, Joshua J. Atkinson, the permanent trustee of William C. Spindler, according to the provisions of the insolvent laws, applicable to the city and county of Baltimore. And that he apply the proceeds of such sale under the directions of the court of common pleas, in the first instance to the reimbursement of the advances made by James Philips, in the purchase of said property at the sheriff's sales and of all permanent improvements, and all other necessary expenditures made upon the said property by him or his representatives, with interest from date of this decree; and that he distribute the balance of said proceeds of sale among the creditors of said Spindler, according to the provisions of the insolvent laws, and under the direction of the court of common pleas."