BULLITT, MILLER & CO. et al. *v.* TAYLOR & RICHARDSON et al.

1. FRAUD AND FRAUDULENT CONVEYANCE: VOLUNTARY SETTLEMENT BY TRADER.—A person engaged in trade may, for the purpose of protecting his family from the casualties and accidents of his business, and saving his property from the payment of debts thereafter to be contracted, make a voluntary settlement of his estate for the benefit of his wife and children; and such a settlement will be upheld against subsequent creditors, unless it shall appear, that the property thus conveyed, remained so situated that the public was likely to be misled as to the true state of the title, and credit given to the grantor on the faith that the property belonged to him.

2. SAME: REGISTRATION OF VOLUNTARY CONVEYANCE NOTICE TO CREDITORS AND PURCHASERS.—The due registration of a voluntary conveyance of property, is notice to the world not to trust the grantor in the faith that the property is his; and hence the allegation in a bill filed to set aside such conveyance, that it was secretly made and recorded, is inconsistent and contradictory. HANDY, J., dissented.

3. SAME: POSSESSION BY GRANTOR IN REGISTERED DEED, WHERE NOT FRAUDULENT.—The possession by the father and husband, of personal property which he has given to his wife and children by a deed duly recorded, is not fraudulent as to creditors.

4. SAME: INSOLVENT PARTNER HAS NO RIGHT TO COMPLAIN OF A VOLUNTARY CONVEYANCE MADE BY HIS ASSOCIATE.—A voluntary conveyance of his property by

Bullitt, Miller & Co. et al. *v.* Taylor & Richardson et al.

a solvent partner, without the knowledge or consent of his insolvent associate, is valid and binding as against the latter; nor does such want of knowledge and consent of the insolvent partner, furnish any grounds to the creditors of the firm to attack the conveyance.

5. SAME: STATUTE OF FRAUDS EMBRACES ONLY EXISTING CREDITORS.—The doctrine, that a conveyance of property made with the intent to defraud existing creditors, is also fraudulent as to subsequent creditors, is founded on the principle, that fraud vitiates every transaction into which it enters, and the conveyance being thus affected by fraud, does not operate to divest the grantor's title, or change the ownership of the property, which still being in the grantor, is subject to his debts; but this doctrine is modified by the Statute of Frauds of this State, which expressly declares that such conveyances shall be deemed void "only" as to those creditors whose rights are thereby defrauded; and hence it does not follow, that because a conveyance is fraudulent as to existing creditors, it is also fraudulent as to subsequent creditors or purchasers. HANDY, J., dissented.

6. SAME: WHEN DEED FRAUDULENT AS TO SUBSEQUENT CREDITORS.—Although, as a general rule, a voluntary conveyance of his property, by a debtor, duly recorded, is valid as to subsequent creditors, yet where a debtor being a trader, makes an arrangement with another for future advances to be made by such person, and also for recommendations to be given by him to other traders, for the purpose of procuring credit from them, such a conveyance afterwards made and recorded without any apparent change in the possession and ownership of the property, will be void as against those who became creditors in pursuance of such arrangement, and who were in fact ignorant of the conveyance; for in such a case, the credit relates back to the original agreement, and it is presumed that the person who was to furnish the credit and give the recommendations, investigated, at the time the agreement was made, the pecuniary condition of the debtor, and thereby ascertained what property he owned, and upon the faith of it gave the credit and recommendations; and having made such investigation, he will not be required to renew it, whenever a new item of credit is given, or a new recommendation furnished.

7. DEED: REGISTRATION ONLY PRIMA FACIE EVIDENCE OF DELIVERY.—The due acknowledgment and registration of a deed is presumptive evidence that it has been delivered, but it is not conclusive.

8. SAME: REGISTERED DEED NOT VALID UNLESS DELIVERED AND ACCEPTED.—A voluntary deed, duly acknowledged and recorded, is not valid, unless delivered to, and accepted by the grantee.

9. CHANCERY: FRAUDULENT CONVEYANCE SET ASIDE AT THE INSTANCE OF A CREDITOR WHOSE JUDGMENT WAS RENDERED IN FEDERAL COURT.—A court of equity of this State will entertain a bill to annul a fraudulent conveyance of his property made by a debtor, where the creditor's debt has been reduced to judgment in a Federal Court held in the State.

10. FRAUDULENT CONVEYANCE: WHEN VOLUNTARY CONVEYANCE FRAUDULENT AS TO SUBSEQUENT CREDITORS.—A voluntary conveyance as to existing creditors

is fraudulent *per se*, and as to subsequent creditors it is also fraudulent if made with the intent to hinder, delay, or defraud them. Per HANDY, J., dissenting.

APPEAL from the Chancery Court of Rankin county. Hon. John Watts, chancellor.

This bill was filed on the 8th day of December, 1856, by Bullitt, Miller & Co., Murry, Miller & Co., and Robert Richards, against Taylor & Richardson, Sarah Ann Taylor (wife of the said defendant Taylor), and ―――― Reber, the trustee in the deed of .'trust sought to be annulled.

The bill, in substance, charges that, about the 1st day of February, A.D. 1852, the defendants, Taylor & Richardson, entered into and formed a copartnership, for the purpose of carrying on "a general mercantile and grocery business," in the town of Brandon; that said Richardson was then known to the public as insolvent; that Taylor had no experience in mercantile business, but was "publicly known as the owner of negro slaves worth about $10,000, and a plantation worth about $3500."

That Taylor & Richardson then purchased goods of several parties, to the value of $13,000; that Taylor sold his plantation for $3500, and applied the proceeds in part payment of the goods so purchased, and that Taylor & Richardson gave their notes for the balance of $9500; that on the 12th day of February, 1852, Taylor "secretly, and with the intent to defraud his then creditors, and also with the view and intention of contracting other debts with the complainants and others, for large amounts, and to defraud them, and without the knowledge of the defendant Richardson, his partner, and without any consideration whatever, made a deed in trust and gift of all his then remaining property and slaves to the defendant Reber, for the use and benefit of himself and wife." A certified copy of this deed is filed as a part of the bill. It is further alleged, "that neither the said deed, nor the said property and slaves therein pretended to be conveyed, was ever delivered to Reber, but that Taylor has remained in the quiet possession and use and control of the same, and held out to the public, as formerly, that he was the sole owner thereof."

That immediately after the formation of the partnership between

Taylor & Richardson, and before the deed in trust was recorded or made, "so far as complainants know or believe," and whilst "complainants had been led by said Taylor & Richardson to believe that all the property of Taylor was subject to the payment of the partnership debts, they, the said Taylor & Richardson, made a commercial arrangement with Wright, Williams & Co., of New Orleans, to assume and pay their existing liabilities, then recently contracted, and to advance to them all amounts of money, or the greater part thereof, necessary to carry on the business, and to give them credit, by mercantile recommendations and letters of credit, to buy goods of the complainants and elsewhere. And that said Wright, Williams & Co. were informed and believed, at the time of said arrangement, that said Taylor was the owner of said slaves conveyed in the deed in trust, and was the sole responsible party, and had no knowledge that said Taylor had made said conveyance, and they would not have given said Taylor & Richardson said credit, money, and recommendations, had they been advised of the said conveyance."

It is further alleged, that under the arrangement with Wright, Williams & Co., they assumed the indebtedness of Taylor & Richardson, contracted at the time they formed the partnership, and that they also gave credit to said Taylor & Richardson from the 1st of February, to the 1st of April, 1852, at different times, and in small sums, to the amount of $100,000, and "in the meantime that Taylor & Richardson, through the instrumentality and recommendation aforesaid, and on the alleged means and pecuniary ability of said Taylor, became indebted to the complainant Richards in the sum of $812 33, to Bullitt, Miller & Co. in the sum of $3548 54, and to Murry, Miller & Co. in the sum of $1298 60. That all of the complainants having been informed by said Taylor & Richardson, and their friends, that Taylor was a responsible man, and owned the said slaves and plantation, or the proceeds of the latter, gave the credits aforesaid to the firm, upon the faith thereof; that they are non-residents of this State, and had no notice or knowledge that Taylor had conveyed his said slaves."

That about the 1st of April, 1854, Taylor & Richardson failed in business, owing about $75,000, of which amount they were indebted to Wright, Williams & Co. in the sum of $28,000, and to

the complainants, as above. That they compromised with Wright, Williams & Co. by paying 75 cents in the dollar, in country paper, and with their other creditors, except complainants, by paying 50 cents in the dollar. That up to the time of their failure, they did not inform Wright, Williams & Co., nor complainants, nor any other person, as complainants are informed and believe, that Taylor had conveyed his slaves by the trust deed aforesaid, nor did complainants know of it, by any other means; "but that said Taylor, with fraudulent intent aforesaid, had continued in the use and possession of the slaves up to the present time."

The bill shows that the complainants had reduced their debts to judgment as follows: Murry, Miller & Co., in the U. S. Circuit Court at Jackson, and Bullitt, Miller & Co., in the Circuit Court of Rankin county, in this State, and executions issuing thereon had been returned *nulla bona*, and the defendants Taylor & Richardson refuse to pay the complainants' debts.

The bill further charges, that Taylor & Richardson had, each of them, applied the partnership assets to their individual use, in the purchase of a house and lot by each in Brandon, which they claim to hold as exempt from execution; that they have also other assets belonging to the firm, which they conceal, and they are now able to pay complainants' claims.

The bill prays that the defendants be required to answer, on oath, the allegations of the bill, and that they be required to exhibit the books of said Taylor & Richardson, together with an account of their transactions, and account of their business; also the individual account of each member of the firm, showing what disposition has been made of any sum or sums they or either of them have taken from the firm's assets, and that the deed in trust be declared fraudulent and void, and the property therein conveyed be subjected to the payment of complainants' judgment, and for general relief.

The deed in trust referred to in the bill is as follows:—

"Whereas I, William M. Taylor, being the owner of certain slaves (naming and describing them), and knowing the uncertainty of life, and of all human calculations, and being desirous to provide against all reasonable contingencies for the future support and maintenance of my beloved wife Sarah Ann Taylor, and her and

my children, have determined to convey all of the aforesaid slaves in trust, for the sole and exclusive use and benefit of my said wife and our children.

"Now, therefore, know all men by these presents, that I, the said Wm. M. Taylor, in consideration of my love and affection for my wife Sarah Ann Taylor, and her and my children, and for the further consideration of ten dollars to me paid by William Reber, of said county, the receipt whereof is hereby acknowledged, have bargained, sold, and conveyed, and do hereby bargain, sell, and convey, all of the aforesaid named negroes, and their increase, to him the said Reber, his heirs and assigns forever : in trust nevertheless for the sole and exclusive use and benefit of my said wife, and her and my children; provided, however, that the said William Reber may, and is hereby authorized and empowered to convey any or all of said slaves, to any person or persons designated and appointed, upon the written request of my said wife, and approved by me; and it is herein further provided, that in case said William Reber shall remove from this State, or from any cause whatever become incapacitated from executing this trust, the Chancellor of the State of Mississippi, for the time being, may, upon the written application or petition of my said wife, substitute and appoint some other person or persons as trustee or trustees, in the place of the said William Reber, and the said trustee or trustees so appointed, shall have the same power as is herein conferred on the said Reber.

"Signed and sealed this 11th day of February, 1852.

"WM. M. TAYLOR.        [SEAL.]"

This deed was acknowledged before a justice of the peace, on the 13th day of February, A.D. 1852, and filed for record on the 24th of that month, and recorded on the second of the succeeding April, in the Probate Clerk's office, of Rankin county.

Each of the defendants filed separate demurrers to the bill, and each assigned the following causes of demurrer :—

1. The bill is multifarious.
2. It is double.
3. The proper parties are not made complainants or defendants.
4. Improper parties are made to said bill.
5. There is no equity in said bill.

6. For other causes, to be assigned at the hearing.

The demurrers were sustained, and the bill dismissed at complainants' cost.

From that decree the complainants appealed.

*W. C. Harper* and *T. P. Ware*, for appellants,
Cited *Sexton* v. *Wheaton*, 8 Wheaton R. 22⁹.

*W. S. Yerger*, on same side, filed an elaborate brief.
*J. D. Freeman*, on same side.

The complainants in this bill were and are judgment creditors of defendants, who were merchants, and who *fraudulently failed* in the payment of their just liabilities to complainants and others.

The defendants filed no answer denying the frauds charged in the bill, but relied on their demurrer alone.

If, then, the bill states a case of fraud, the demurrer admits it, and there should have been a decree for the complainants. Let us examine this question first.

The complainants, during all the transactions named in the bill, were citizens of a foreign state, while defendants resided in Mississippi, where the fraud was finally consummated.

In February, 1852, defendants entered into a mercantile partnership, in the town of Brandon. Richardson was an experienced merchant, but known to the public to be insolvent. Taylor had no experience in merchandise, but owned a farm worth $3500, and slaves worth $10,000—say $13,500—which was all the capital of the concern.

They purchased of J. R. Kerkland & Co. goods to the amount of $10,000—$3500 of which was paid by a sale of Taylor's farm, leaving a balance of $6500 due, for which their notes were given; they also became indebted to J. M. & J. J. Chambers, in the sum of $2500, and to S. C. Moore $500, making the sum of $9500, which was about the value of Taylor's slaves. All this occurred the 1st of February, 1852. Taylor had sold his plantation, and was still liable to pay $9500, being about the value of all his remaining property, to wit, his slaves, and his partner a bankrupt. If the firm failed in their business, Taylor's slaves would all be sacrificed to pay the firm debts.

Accordingly, on the 12th day of the same month, Taylor secretly

and without the knowledge of his own partner, with a view of defrauding his then creditors, and in contemplation of creating a much larger indebtedness in foreign States where he knew his fraudulent conduct could not be known, made a voluntary conveyance of all his remaining property, to wit, the said slaves, to the defendant Reber, in trust for his wife and children.

This deed, after reciting the names of the slaves, developes the grantor's motive in these words : "Knowing the uncertainty of life and all human calculations, and being desirous to provide against all reasonable contingencies for the future support and maintenance of my beloved wife Sarah Ann Taylor, and her and my children, have determined to convey all of the aforesaid negroes in trust for the sole and exclusive use and benefit of my said wife and our children." He then makes the conveyance, but provides that neither his wife, nor the trustee at her request, shall dispose of the negroes without his approbation. He retains the possession of the slaves and the power to prevent a sale by any other person. His control over the property is therefore as absolute as if the deed had not been made. The trustee was not authorized to take possession of the slaves, nor was he required to receive and account for their hires to his wife and children, nor to any other person. Neither the trustee, the wife, nor the children, have ever possessed or claimed the said slaves or their hires, but Taylor has held the same as formerly to the present time. All the parties to the deed in trust have treated it as a nullity. Neither the trustee nor the *cestui que trusts* have claimed under it. It was a voluntary act of the grantor, but the property having never been delivered, no title passed, and the slaves remain the property of the grantor in the deed.

A voluntary conveyance of personal property, without consideration and unaccompanied by delivery, will never be enforced at law or in equity.

The deed is therefore a mere cloud upon the title of complainants, who have judgment liens on the slaves.

Again. The motive of the grantor, as stated by himself in the deed, taken in connection with his indebtedness and perilous situation, proves the act to have been fraudulent and not *bona fide*. What does he mean when he speaks in the deed of the "uncertainty of life and all human calculations," and of his desire to pro-

vide for his family " against all reasonable contingencies?" He means simply that his situation is perilous. He is employed in a hazardous business. His partner is a broken merchant—a bankrupt; he is himself ignorant of the business of merchandise, and he is now indebted to the full amount of all his remaining property—still greater indebtedness and increased perils must be encountered in order to carry on the trade. If misfortune overtakes him, his negroes will be lost. He will, therefore, give them away to his wife, but retain their possession, maintain a veto on the sale, have the full enjoyment of the property, but at the same time place it beyond the reach of his creditors. It was a clear provision for himself at the expense of his creditors. It is true he used the name of his wife, but he never parted with the property he pretended to bestow. True, he prated in the deed about love and affection for his wife and children, but the result proved that his love for the negroes prevailed. He never delivered them to his wife nor to her trustee. He still has them in possession and enjoys their labor.

The gift in this case was neither upon a good consideration nor was it *bona fide*. Both must concur to make it solid; if defective in either particular, it is utterly void as to creditors. 1 Story Eq. Jur. 379, sec. 353.

If a man who is indebted conveys property to his wife or children, it is not, in contemplation of law, *bona fide;* for it is inconsistent with the good faith which a debtor owes to his creditors to withdraw his property voluntarily from the satisfaction of their claims; and no man has a right to prefer the claims of affection to those of justice. 1 Story Eq. Jur. 381, sec. 355.

The statute of Mississippi prohibits the wife from thus receiving property from her husband. But the foregoing facts, conclusive as they are on the point of fraud, are followed by far more wicked developments.

We have already seen that he had contracted a domestic or home debt, equal to his whole estate, and secretly covered his estate by a deed in trust inuring to his own benefit. What follows? He had now fairly entered upon the credit system. He had the reputation of a man of property. He proposes and makes arrangements, on this reputation, with merchants in a foreign State, who are wholly

unapprised of his deed of gift to his wife, and before the same was recorded or discovered by the public or partner, he obtains a credit in New Orleans with a wealthy and influential house, and through their recommendations and letters of credit, their business, in a short period, runs up to $100,000. The business of the firm was apparently prosperous; they led the world to believe it was. Each partner provided himself with an elegant residence from the proceeds of their business, taking care to hold it under the Homestead Exemption Law of this State. Here is another voluntary conveyance of property for their own benefit.

Being now comfortably secured with dwellings and slaves beyond the reach of executions, and money in hand from the sales of merchandise, in the midst of their prosperity they became suddenly insolvent, and only offer fifty cents in the dollar, in country paper. They have met with no losses or misfortunes; they make no showing to their creditors of their condition, but put them at defiance, and compel them to settle on their own terms. All this was accomplished in two years. On this denouement, it was discovered that Taylor's negroes were covered from execution by a voluntary deed in trust, and the residences of both defendants held secure under the Exemption Law. These shameless frauds are all admitted to have been committed by the defendants in this cause, and are sought to be justified by law and equity. They settle most of their liabilities at a heavy discount. Taylor then buys the interest of Richardson in the concern, and indemnifies him against the payment of complainants' claims.

That the defendants shaped all their ends with a view of defrauding their creditors, is clearly charged and admitted; but we are gravely told, by opposing counsel, that the fraud has been so adroitly committed, that a court of equity cannot reach it, and to this end it is insisted that the debts owed by the firm at the time the trust was made, have since been paid. The bill says arrangements were made with Wright, Williams & Co. to advance the money to pay them, but it is not admitted that the same were paid. The deed, then, was fraudulent, in fact, as to the home creditors. It was also fraudulent, in fact, because made in contemplation of obtaining a much larger credit in Louisiana, and with a view to purchase homesteads, and hold them under the Exemption Law,

which they in fact did; and when these ends were accomplished, they failed, and attempted and obtained a compromise of many of their obligations. If, then, the creditors existing at the date of the deed were paid by compromise, or in full, it does not change the fraudulent character of the deed as to the foreign creditors, with whom they contracted before the deed was recorded, and who had neither actual nor constructive notice of the deed.

This is, therefore, clearly within the rule in *Henry* v. *Fullerton*, 13 S. & M. 634, "that if a subsequent creditor can show actual fraud as to existing creditors, the deed would be void as to subsequent creditors."

In the case of *Winn* v. *Barnett*, 31 Miss. 657, the court, in speaking of the cases held fraudulent as to subsequent creditors, say: "The property was either so situated that it enabled the debtor to obtain credit on the faith of it, or the fraudulent vendee was regarded as a trustee under the secret arrangement of the parties, and bound to account to the vendor; and hence the creditor was allowed to be substituted to what was considered the substantial interest of the vendor." *Winn* v. *Barnett*, 31 Miss. 657. Assuming this to be the reason of the rule, the case at bar is within it.

The allegations of the bill show that all the creditors in Louisiana traded with and credited the firm on the faith of Taylor's slaves. His secret trust to Reber, for his wife, had not then been recorded, and after it was recorded, it was not in fact made known to the domestic or foreign creditors. Taylor continued to hold and control the slaves, as formerly. Neither his wife, nor Reber, the trustee, claimed them, or asserted any right to them. The reservation in the deed, that neither the trustee, nor *cestui que trust*, should dispose of the slaves without the consent of the grantor, coupled with the right of the grantor to possess and control the property, is equivalent to a provision that the property shall revert to the grantor, which brings the case within the rule in *Hudnal* v. *Wilder*, 4 McCord, 294, on which defendants in error rely.

The bill also charges that the deed was made in contemplation of *future debts*, to be created by defendants, Taylor and Richardson. These debts were created.

See 3 Johnson's Ch. Rep. 497, and 2 Atk. R. 478 and 600, where it is held by Lord Hardwick, that when the donee *remains in*

*possession*, and thus deceives his creditors, the conveyance will be set aside. Such was the fact here.

The case of *Sexton* v. *Wheaton*, 8 Wheaton R. 229, is not in point. There the wife had purchased *real estate*, and taken a deed to herself, two years before the debt sought to be enforced was created—and the deed was on record according to law.

In that case, the defendants answered the bill, and denied all the charges of fraud. Here all the charges of fraud are admitted. Here the husband conveyed his own slaves, and retained the possession and a veto on their sale, which gave him the whole estate. In that case the court say, " The bill does not charge Mr. Wheaton with having been indebted, at the time the conveyance to his wife was made—there is no proof that such was the fact; it was, therefore, a conveyance made at a time when he was not indebted, two years before he contemplated contracting the debts sought to be enforced." 8 Wheat. 229.

It is also insisted that the record of the deed in trust, in Ranken county, Mississippi, was notice to complainants, and therefore they cannot complain. To this I reply, that the complainants were non-residents of the State; they did not, in fact, know of the record or deed, and they were put off of their inquiry by defendants assuring them that Taylor owned the slaves he had in possession, and claimed to be the owner, and if this were true, there could be no record of his title to the slaves, as in the case of real estate. The complainants were therefore defrauded, in fact, and the defendant Taylor cannot now be heard to say he recorded his deed.

As to the charge of multifariousness, no relief is sought against the partnership effects, because there are none. All that is said in the bill as to the partnership effects, is merely to charge the defendant with a fraudulent and simulated- failure, and in this connection it is also charged that Taylor has purchased Richardson's interest in the concern, and indemnified him against the payment of complainants' demands. This assumpsit makes him responsible in his individual real estate at all events, even if he were not previously liable.

But the bill only seeks to uncover his individual estate. It seeks no account of partnership effects. A prayer for discovery, in order

to obtain evidence of fraud, is not a prayer for relief or payment out of the partnership effects.

*W. P. Harris*, on same side.

The bill in this case fulfils every condition prescribed in the well-considered opinion in *Henry* v. *Fullerton*, 13 Smedes & Marshall, 631. In that case, a subsequent creditor filed a bill to set aside a voluntary conveyance made by the husband to the wife. The creditors, who were such at the time of the conveyance, were not joined in the bill, and had not sought to set aside the conveyance. It was set aside at the instance of the subsequent creditors. The court said, "The question arises, is such a deed void as to subsequent creditors? We have given it a very careful examination, and the result of the authorities entitled to the most weight seems to be that, if a subsequent creditor can show fraud in fact, by showing that the conveyance was made to avoid the future debts about to be contracted, or to defraud existing creditors, the conveyance is void, not only as to the present but as to subsequent creditors also." The court cited the leading cases. *Reade* v. *Livingston*, 3 Johns. Ch. 481; *Sexton* v. *Wheaton*, 8 Wheaton, 229; *Hinde* v. *Longworth*, 11 Wheaton, 199; 2 Kent Com. 441, and note. See *Vertner* v. *Humphries*, 14 S. & M. 130.

These citations serve to show that the court had looked into the leading cases. But in order to show that the question was decided in accordance with the course of decisions all over the Union, as well as in England, the court cited the case of *Richardson* v. *Smallwood*, Jacobs Ch. 552; a case, with reference to which the texts of Story and Kent have been carefully squared.

The court is moreover requested to examine the case of *Mills* v. *Morris*, 1 Hoffman Ch. Rep. 419, as it bears a striking resemblance to the case made by the bill.

In that case a voluntary conveyance was made at a time when the grantor, though considerably indebted, was not insolvent. He had given directions to have a deed of settlement in favor of his wife prepared, as early as March, 1837. It was executed in September of that year, and in November succeeding, the grantor purchased a lot of wine from the complainant, and gave his note for it. It appeared that before complainant filed his bill to set aside the

Bullitt, Miller & Co. et al. *v.* Taylor & Richardson et al.

conveyance, all the creditors, who were such at the date of the conveyance, had been paid off; but, in the language of the court, it did not appear "that they were paid off in the interim between the delivery of the deed and the time the debt was contracted to the plaintiff." The chancellor cited *Sexton* v. *Wheaton*, and *Richardson* v. *Smallwood*, and said that the authority of those cases "determined the deed to be invalid."

This case, and the case of *Henry* v. *Fullerton*, decided by this court, settle the question that subsequent creditors may proceed, and that such a conveyance will be set aside at their instance, although the creditors at the time of the conveyance have never questioned its validity, and where, in fact, they have been paid off.

It is, beyond all doubt, the correct doctrine, that in respect to fraudulent conveyance, subsequent creditors need not wait until the conveyance has been attacked by prior creditors. Because it might then be in the power of the fraudulent grantor to compromise or buy off the prior creditors, and thus defeat the subsequent creditors altogether.

The conveyance here is of the bulk of the debtor's property to his wife, at a time when he had embarked in a hazardous and uncertain enterprise, and when he had actually contracted debts to the amount of $9000, and expected to contract more. The circumstances show clearly that he had so concerted measures that he had everything to gain and nothing to lose, and operating thus with a partner who was equally impervious to the accidents of trade, he ran that reckless career which, in his opinion, he could follow with impunity. The career was short, and fatal to those who trusted him, and who, perhaps, had not the foresight and insight which distinguished him. He came out unscathed, with an ample provision for his family, leaving innocent men to bear his losses, and to admire his sagacity.

Story, in speaking of these post-nuptial settlements in favor of the wife, says: They will be sustained only in those cases when the nature and circumstances of the gift are such that there is no ground to suspect fraud. Story Eq. Jur. § 355.

In *Radcliffe* v. *Dougherty*, this court say that such gifts, to be valid in equity, must be free from fraud, and are never upheld in opposition to creditors. 24 Miss. R. 181.

Take the greatest latitude ever given to such conveyances, to wit, that they are *prima facie* valid in all cases as to subsequent creditors, and still the direct charge of fraud in fact, as to them, which is distinctly made in the bill, is sufficient to sustain it. *Botts* v. *Casine*, 1 Hoff. Ch. Rep. 79 ; 1 Story Eq. Jur. § 361.

It is apparent that the court below did not decide that improper parties had been united as defendants, because the demurrers, being separate, the decision would have resulted in a dismissal of the bill as to the defendants improperly made parties.

It may be safely affirmed that no objection could be founded on the misjoinder of plaintiffs, because the joinder of several judgment creditors, all of whom have claims on the property, and all affected by the fraud, has been held, over and over again, to be proper. *Comstock* v. *Rayford*, 1 Smedes & Marshall, 423.

The objection of duplicity and multifariousness is equally without foundation. It will be apparent, from an examination of the bill, that the object of it, is to set aside the conveyance made by the defendant Taylor to his wife. This is the specific relief prayed.

The bill, by way of accumulating facts showing a positive purpose to defraud creditors, carried out by several contrivances, imputes to the partners a pretended or simulated failure, and false exhibit of the condition of the concern, and a fraudulent appropriation of firm assets, all tending to the same result, the secreting of property from creditors, and calls for an inspection of the books of the establishment, and a statement of losses and gains, and a statement of accounts as between the partners, explanatory of the charge. The object of this part of the bill seems to have been to show that the defendants had fraudulently placed all their property beyond the reach of legal process, and also to show a manifest and flagrant fraud, contemplated at the outset, and carried out in the result. No relief is sought in respect to the partnership accounts.

But if the court should conclude that the scope of the bill embraced a design to trace the partnership assets, fraudulently appropriated and secreted, it is clear that such an object may be pursued in the precise connection in which it stands in the bill, without violating the rules of pleading. The partnership assets are also liable to the claims of these creditors ; and where there is a design to defraud creditors, it matters not that different methods may be

pursued in reference to different items of property. It was clearly competent in a bill to set aside a fraudulent assignment or disposition of property, to unite the partnership interest of the debtor, with the individual interest, both having been disposed of for the same purpose, and the fraud affecting the same parties. Therefore the bill might, with propriety, seek to trace the partnership property, and the individual property, into the hands of several parties.

There is no rule as to multifariousness, except it be this: that the court will not allow distinct and independent matters, in regard to which distinct relief is prayed, to be inserted, when serious inconvenience will be occasioned to the defendants, unless public convenience, and the necessity of avoiding multiplicity of suits, require it.

It is a matter of discretion in the court. It is not necessary that each defendant shall be connected with every part of the bill, or matter set up; it is sufficient if they are connected in respect to the main leading object of the bill, and are instruments in carrying the same fraudulent design into effect.

Moreover, where no relief is prayed in respect to certain matters, or where the court has no jurisdiction of them, the blending of such matters with others, in respect to which relief is prayed, and can be granted, is no ground of demurrer. Story's Equity Pleading, 516, 521, 524 (authorities on the general doctrine).

It would be proper, though perhaps not necessary, in favor of the voluntary donee even, to take an account of the firm assets as they are, as between Taylor & Richardson, first liable to the firm debts, before the individual property of Taylor.

The objection of want of proper parties defendant did not justify the dismissal of the bill even if well taken, and the decree should be reversed here, and a decree rendered directing or allowing proper parties to be brought in. The demurrer does not point out what parties are omitted, and it does not appear by the bill that there are other parties *in esse* who ought to be joined. The deed to Reber conveys the property to him in trust for the benefit of the wife and "of her and my children." It does not appear that they had any children at the time, nor that there are children in existence now. Besides, they are properly represented by the trustee,

and besides the bill alleges that the conveyance was for the benefit of "Taylor and his wife."

The objection should have been made by plea and not by demurrer. At all events the bill is sufficient as it stands, so far as the interests of the parties before it are concerned, and should not have been dismissed.

The demurrer is not accompanied by an answer denying fraud.

Where the fact appears that the voluntary conveyance has actually withdrawn property which would otherwise be liable to the demand of creditors, and that the party making it had contracted debts at the time, and was embarking in a business which common experience teaches us is uncertain and likely to involve him in debt, and as in this case he actually makes arrangement to trade to an extent beyond his capital and means, entering fully into the credit business, the conveyance is not only suspicious, but should be set aside on these facts alone. Public policy demands that the courts should not add by their sanction the extraordinary stimulant to reckless speculation, which would be imparted by legalizing the privilege to the trader, of conveying the bulk of his property to his family on the eve of his starting into a credit business. When we consider that all these facts appear in the bill, coupled, moreover, with a positive charge of fraudulent intention, the decision of the court below becomes matter of surprise.

*F. Anderson*, for appellees,

After stating the case said: The general charges of fraud and fraudulent intent will not sustain the bill unless the facts stated, on which those charges are made, authorize subsequent creditors to come in and impeach the deed.

It will be seen that immediate notice was given to all the world of the conveyance of Exhibit H. by recording it. It appears further that Taylor owed no debts except those contracted as a member of the firm of Taylor & Richardson, and that before the execution of the conveyance, they had made arrangements to have those debts paid, and they were paid.

It appears further that Taylor and Richardson had already paid in cash fully one-third of the amount of the goods which they had purchased, and had those goods to represent the balance of the

debt. In other words, they possessed $13,000 worth of goods, at prime cost, which they might, no doubt, fairly expect to sell at an advance of at least twenty per cent., or at $15,600, while their indebtedness was only $9500. Besides these means, they had made an arrangement with Wright, Williams & Co., to pay this indebtedness. Certainly their condition was at that time more than usually secure and solvent.

Our Statute of Frauds, Hutch. Code, 637–638, contains the following provision, not to be found in the statute 13 Eliz., nor in those of any of our sister States as far as I know, except Tennessee and Virginia:—

"And, moreover, if any conveyance be of goods and chattels, and not in consideration deemed valuable in law, it shall be taken as fraudulent within this act, unless the same be by deed duly acknowledged and recorded, in the case of personal property in the county where the donee resides, or the property may be, and the proof of acknowledgment, &c., shall be, &c., and recorded, in three months after the execution thereof, unless in the case of personal property, possession shall really and *bonâ fide* remain with donee."

Before examining the effect of this provision, let us see how the law stood under the statute 13 Eliz., and those of the several States. No subject has given rise to a greater number of decisions, nor to a greater variety and conflict of judicial opinions.

The bill seeks to avoid the conveyance on the ground of actual fraud as to existing debts, and also on the ground of actual fraud as to subsequent purchases.

This court, in the case of *Henry* v. *Fullerton*, 13 S. & M. 634, which was the case of a subsequent creditor, held, "That if a subsequent creditor can show actual fraud as to existing creditors, the deed would be void as to such subsequent creditor;" and subsequently, in the case of *Humphries* v. *Vertner*, 14 S. & M. 142, which was also the case of a subsequent creditor, the court, quoting from *Henry* v. *Fullerton*, the language given above, said, "The language is very general, and it is difficult to extract any entirely definite rule. It seems, however, to be beyond doubt, if the party is insolvent at the time of making a voluntary conveyance, it is void as to subsequent creditors," citing 5 Vesey, 387. The court also said further, "The rule is thus stated in *Holloway* v. *Millard*, 1

Mad. Ch. R. 417. A voluntary conveyance is *prima facie* evidence, when the party is loaded with debt at the time, of an intent to defraud and defeat creditors. In that case, complainants were subsequent creditors."

For the sake of the argument we may take this as the rule, but remark that it has been greatly modified if not entirely abrogated, in the more recent case of *Winn* v. *Barnett,* 31 Miss. Rep. 657, where, in the case of subsequent creditors, it was held that " It is true that it has been held in some cases that where a conveyance was fraudulent in its inception, as to creditors at the time, it will be so treated as to subsequent creditors; but these cases rest on one of two principles. The property was either so situated at the time that it enabled the creditor to obtain credit on the worth of it, or the fraudulent vendee was regarded as a trustee under the secret arrangement between the parties, and bound to account to the fraudulent vendor, and hence the creditor was allowed to be substituted to what was considered the substantial merit of the vendor."

But as we said, supposing the rule to be, for the sake of the argument, that the being loaded with debt, or insolvent at the time of a voluntary conveyance, is evidence of fraud as to existing creditors, of which subsequent creditors may avail themselves, but as it is only evidence, and may be rebutted, as the court held in *Vertner* v. *Humphries,* it is evident that if the fact is neutralized by other circumstances, it authorizes no such presumption, as peradventure, if in the deed itself the party provides for the payment of the debts, in proof that the debts were otherwise secured, or that they were subsequently paid. In *Hester* v. *Wilkinson,* 6 Humph. 219, it was held that though no express provision was made in the deed, yet if the existing creditors were provided for otherwise, there was no intentional fraud.

In *Hudnal* v. *Wilder,* 4 McCord, 294, the Supreme Court of South Carolina held, that where a deed was void as to existing creditors, the payment of the debts will cure the defect; but when it is attended with circumstances that show that no change of property was intended, but that it should revert to the donor as soon as the debts were paid, the rights of a subsequent purchaser cannot be affected by the payment of the debts.

In 3 Strobhart Rep., in the case of *Ingram* v. *Phillips*, which was the case of a subsequent purchaser, who always stood on higher ground than a subsequent creditor, in case of a sale clearly made in actual fraud of existing creditors, the Supreme Court of South Carolina held, that supposing the title of defendant to slaves on no higher ground than that of a voluntary grant, it was only voidable as to existing creditors; but as the existing debts had been paid off, the title was good under the voluntary grant. This was a case of actual fraud.

See also *Reade* v. *Livingston*, 3 John. Ch. 481. In this case, Chancellor Kent lays down the rule more strongly against voluntary deeds (pursuing the dicta of the English courts), than it is sustained by the weight of American authority. In fact, the principle of this case was overruled in the Supreme Court of New York, in the Supreme Court of the United States, in *Sexton* v. *Wheaton*, 8 Wheaton, 229, is denied by Judge Story, in his Equity Jurisprudence, sec. 352, *et seq.*, and in the last edition of Kent's Commentary is admitted to have stated the rule too sternly against debtors. Yet Chancellor Kent, in that case, admitted that the presumption of fraud, arising from indebtedness (which our court says must be insolvency, or a load of debt) at the time, with respect to subsequent creditors, may be rebutted by circumstances, as that the existing debts are secured by mortgage or by a provision in the settlement. He further says: " Subsequent creditors may impeach the settlement by showing antecedent debts sufficient in amount to afford a reasonable evidence of fraudulent intent." *Reade* v. *Livingston*, 3 John. Ch. R. 501; see top of page 499.

These cases, and many others which might be cited, clearly show that on account of an existing indebtedness, a subsequent creditor can only impeach a voluntary conveyance for actual fraud as to such existing creditors, by showing that the existing indebtedness was so great as to authorize the inference that the party actually intended to defraud, but that even in such case, that inference could' not arise from a great indebtedness, if other provision is made for the existing debts; and they are applicable to the present case in two points of view.

1. It is evident that there was not such indebtedness in this case

as to show an intent to commit actual fraud. We have already shown that Taylor was only indebted, as a member of the firm, about $9500, to represent which, the firm had, say $15,000 worth of assets, and also ample credits.

The bill shows clearly that provision was already made before the deed for the payment of those debts, and that they were subsequently paid.

The argument thus far has proceeded on the ground, that the subsequent creditors were not chargeable with notice, actual or constructive, of the conveyance. How far they could take advantage of any fraud as to existing creditors, in case they had notice of the voluntary conveyance, will be considered under the second branch of the subject, which we now proceed to discuss.

2. The second ground on which the bill is founded, is fraud as to subsequent creditors.

Chancellor Kent, in the case already cited, 3 John. Ch. R. 497, thus sums up the matter as to subsequent creditors: "They are let in only in particular cases, as where the settlement is made in contemplation of future debts, or when it is agreed to set it aside in favor of prior creditors, or when the subsequent creditors can impeach the settlement as fraudulent, on account of the prior indebtedness."

The conveyance here is not impeached by firm creditors, and we have shown that it is not fraudulent in fact as to them, and will hereafter show that if it were, subsequent creditors with notice, actual or constructive by record of the deed, cannot come in. But the question still remains, to what extent a voluntary conveyance is fraudulent because made in contemplation of future debts. The phrase is an indefinite one, but traced to its origin in the case of *Stillman* v. *Ashdown*, decided by Lord Hardwick, 2 Atk. 478, we shall find that the contemplation of future debts can only make a conveyance fraudulent when the party remains in possession of the property, thus deceiving those who deal with him on the faith of it. In that case the debtor had remained in possession of the property twenty-five or thirty years. It may be admitted as a general proposition that where one makes a voluntary conveyance, and then remains in possession and contracts debts, or where he contracts

Bullitt, Miller & Co. et al. *v.* Taylor & Richardson et al.

debts so immediately after the conveyance as to afford a fair presumption that the creditor may not have known of the conveyance and may have given credit on the faith of his ownership, it would be fraudulent, but in any other case to say that the mere fact that a party contemplated a future indebtedness made the deed fraudulent, would be absurd.    Certainly it could not be a fraud on a creditor who trusts an individual well knowing that he had conveyed away voluntarily certain property, or even all his property.    An important case to be hereafter relied on is an express authority on this point.    *Martin* v. *Olliver et al.*, 9 Humphries, 562.

In that case, the deed, which was a sweeping one of all the property, was held good as to subsequent creditors, although it expressly provided that the wife should hold the property against the future debts of the husband.

This matter is made clear by reference to the well-established distinction in the English cases and in some of the American cases between creditors and subsequent purchasers.    In regard to the latter it was held that a voluntary conveyance was fraudulent whether they had notice or not, but in regard to the former it was always admitted that the conveyance was good if they had notice of it, and this clearly on the ground that if they had notice, there could be no fraud as to them, since they could not be supposed to deal with a party and give him credit on the faith of his ownership of visible property, when they knew that he had made a conveyance of the property, which was at least valid and binding on himself.

The following authorities will, we think, make this proposition still more clear.    Before proceeding to cite them, however, let us remark, that what appears to have been the stern rule, founded in various dicta of Lord Hardwick and others, presiding in Westminster Hall, that the mere fact of indebtedness at the time of a voluntary conveyance, coupled with a subsequent indebtedness, made the deed void, has been distinctly overruled in the case of *Saxton* v. *Wheaton*, 8 Wheaton, 229, and by the decision of Chancellor Kent and others, our own court amongst them.    The indebtedness at the time, unless it amounted to insolvency or a load of debt, can have no influence in establishing a fraudulent intention.

*Taylor* v. *Jones*, 2 Atk. 600.    This was a case of a subsequent creditor.    Lord Hardwick said, "Now in the present case here is a

trust gift to the husband in the first place under this deed; and his continuing in possession is fraudulent as to the creditors, the plaintiffs." And again he said, " And it is very probable that the creditors, after the settlement, trusted Edward Jones, the debtor, upon the supposition that he was the owner of the stock, upon seeing him in possession."

*Stillman* v. *Ashdown*, 2 Atk. 478. Commenting on the case in 8 Wheaton, 229, Ch. J. Marshall says, "Lord Hardwick, in his opinion, put the case expressly on the ground that this, from its circumstances, was not an advancement to the son ;" in other words, that it was a secret trust for the grantor. And again, "A father here was in possession of the whole estate, and must necessarily appear to be the visible owner of it."

*Stephen* v. *Olive*, 2 Brown's Ch. Rep. 90. In this case, Edward Olive conveyed the whole of his estate, and at the same time mortgaged it to secure a debt of five hundred pounds, and subsequently became indebted. The conveyance was held good, and Ch. J. Marshall, commenting on this case, says, "A man who makes such a conveyance" (of the whole of his property), "necessarily injures his credit, and if openly done, warns those with whom he deals not to trust him too far ; but this is not fraud."

Further commenting on this case, Ch. J. Marshall, in 8 Wheat. 229, said, "These circumstances, then" (indebtedness immediately after the conveyance, and subsequent insolvency), "both occurred in the case of *Stephens* v. *Olive*, and were not considered as affecting the validity of that deed. The reasons why they should not in this case be considered as indicating fraud, are stronger than in England. In this district every deed must be recorded in the place prescribed by law; all titles to land are placed on record. The person who trusts another on the faith of his real property, knows where he may apply to ascertain the nature of his title. In this case the title never was in Joseph Wheaton ; his creditors, therefore, never had a right to trust him on the faith of this house and lot." The case, as we will show, is twofold stronger when, as in this State, the very statute under which it is alleged that the conveyance is fraudulent, authorizes the grantor to make a voluntary conveyance and remain in possession, provided he has the deed recorded.

*Doe* v. *Manning*, 9 East, 59, 63. In this case Lord Ellenbo-

rough reviews the cases, and shows that a subsequent purchaser stands on higher ground than a subsequent creditor. In regard to the former, a voluntary conveyance is void, even though he had notice of it—such is the English rule.

*Verplanck* v. *Stanley*, 12 Johns. 536. In this case Judge Spencer points out the difference between subsequent purchasers and subsequent creditors in this respect, and the incongruities arising out of it, showing clearly that such conveyances were never held void as to subsequent creditors with notice. This opinion is affirmed by the court in the case of *Wells* v. *Treadwell*, 28 Miss. Rep. 717.

*Fleming* v. *Townsend*, 6 Georgia, 110. The difference in this respect between subsequent creditors and subsequent purchasers, is also pointed out in the English cases, but a different rule adopted as the rule in America, founded on the case in *Cathcart* v. *Robinson*, 5 Peters 281, and *Verplanck* v. *Stanley*, 12 Johns. 536.

*Eichelberger et al.* v. *Kibber*, 1 Hill's Ch. Rep. S. C. It was expressly decided that a subsequent creditor, with notice of a voluntary conveyance, and one made when the party was deeply embarrassed, and therefore fraudulent as to existing creditors, could not set it aside.

*Kidd* v. *Mitchell*, 1 Nott & McCord, 335. The Supreme Court of South Carolina held, that a voluntary deed was not fraudulent and void because it conveyed all the property of the party, nor because he remained in possession; in such case it was only void as to creditors, and subsequent purchasers without notice.

In this case, also, the court puts the question on the ground we are now contending for, saying: " The ground on which voluntary deeds are fraudulent as to creditors" (the court is speaking of subsequent creditors), " is, that he who has credited another on the faith of possession of visible property, shall not be defeated of his debt by a voluntary transfer; and the same principle applies in favor of subsequent creditors and purchasers without notice, where the debtor remains in possession."

*Howard* v. *Williams*, 1 Bailey's S. C. Rep. 578. This was a case of gift, by a father largely indebted at the time, which was assailed by a subsequent creditor. The grantor remained in possession of the property. It was held, that possession by the father

was possession of the child, and that it was good against subsequent creditors. The true principle, as held by the court, is, that possession is visible evidence of ownership, and if unexplained, is regarded as fraudulent, in favor of creditors who may be defeated of just rights by the false light of property held out to the world; but in the case of father and child, the possession is sufficiently explained. In this case it was further held, that a voluntary gift will always be upheld against creditors with notice, and, if bona fide, will be upheld, even against creditors without notice.

I am aware that the reporter adds a note to this case, in which he says that the propositions here announced have been somewhat limited and modified by subsequent decisions; but on examining the cases referred to by him, it would seem that the principles above announced, so far from being changed or altered, are approved and adhered to.

The same principles were announced in Madden v. Day, 1 Bailey, 587.

The doctrine is now universal in America, notwithstanding it is admitted that a subsequent purchaser stands on higher ground than a subsequent creditor, that nevertheless a subsequent purchaser with notice is not protected. Stanly v. Blanton, 6 Blackford, 194; Kidd v. Mitchell, 1 Nott & McCord, 335; Herring v. Towshend, 6 Georgia Rep. 110; Hudnal v. Wilder, 4 McCord, 294; Story v. Arden, 12 John. 536.

The effect of these decisions is simply to deprive the subsequent purchaser of his superior equity under the English decisions, and place him, so far as this matter is concerned, in the same position with a creditor; that is to say, holding a voluntary conveyance good as to him, if he has notice.

We take it, that it is the clear inference, from all these decisions, showing clearly that subsequent creditors, with notice, could not impeach a voluntary deed for fraud; that when courts speak of voluntary deeds being void as to future creditors, when made in contemplation of future indebtedness, following Lord Hardwick, in Stillman v. Ashdown, they only reason that it is void as against such creditors not having notice, that is, dealing with the party on the faith of his visible ownership; and this arises where he retains the possession, or where the subsequent indebtedness is so soon after the conveyance as to leave a plain presumption, even

when the grantor had parted with possession, that he had obtained credit on the faith of his previous ownership, sufficient time not having elapsed to give notoriety to the fact that another was in possession.

We call attention to the fact that these cases hold, that even in case of actual fraud, as to existing creditors, if a subsequent creditor has notice, he cannot impeach, clearly on the principle that when he credited the party, he knew that he had made a conveyance, which, though void as to existing creditors, was binding to convey away all the grantor's right.

The inference which we have drawn from the authorities cited above has received the sanction of this court in the case of *Winn* v. *Boswell*, 31 Miss. 657.

In that case the bill alleged that the slaves which were sought by a subsequent creditor to be subjected to the payment of his debt, were purchased for the wife of Winn; and I infer (though it is not stated), since otherwise there would have been no case in court, that Winn paid the purchase-money. It was further alleged that Winn was greatly embarrassed, and that the bill of sale was colorable and void. There was a demurrer filed, which was overruled, and an answer filed, and testimony was taken; but the court, deciding on the demurrer, held, that the principle which lies at the foundation of every judicial proceeding, at the instance of creditors to set aside a voluntary disposition of property, is that the credit was gained or the debts contracted on the faith of such property. Hence, if it do not appear that the debts existed at the time the disposition of the property was made, the transaction cannot, as a general rule, be said to be fraudulent as to creditors, for the obvious reason, that credit was not given on the faith of the property.

The court says further, that the Statute, Hutch. C. 637, 638, so far from being intended to enlarge or extend the rule which previously existed, had for its object, to restrict the rule and make it apply only to creditors who were hindered, delayed, or defrauded by the transaction.

It must follow, therefore, that persons who were not creditors at the time the defendant's title accrued to the slaves, were not and could not be defrauded, hindered, or delayed, in consequence of the transaction.

It is true that it has been held in some cases that where a conveyance was fraudulent in its inception as to his creditors at the time, it will be so treated as to subsequent creditors. But these cases must rest upon one of two principles,—the property was either so situated at the time, that it enabled the creditor to obtain credit on the faith of it, or the fraudulent vendee was regarded as a trustee under the secret arrangement between the parties, and under such secret arrangement bound, so far as the contract or his word could bind him, to account to the fraudulent vendor, and hence the creditor was allowed to be substituted to what was considered as the substantial interest of the vendor. *Lisloff* v. *Hart*, 25 Miss. 250, is to the same effect.

This case seems to me to put an end to further discussion. It is not only conclusive on the points discussed, but also holds that the same charge in the bill, that the transactions were fraudulent and colorable, will not be sufficient when the facts stated show that they do not fall under the condemnation of legal principles.

If we have been successful in establishing the propositions contended for, then the question remains whether, under the statute we have quoted above, Hutch. C. 637, 638, the record of the deed is not such notice to subsequent creditors and purchasers as the law requires.

In examining the state of the law on the subject, as I have endeavored to set it forth above, it would seem that the provision of our statute quoted above, Hutch. C. 638, was inserted for the only purpose of making such record notice. It provides that voluntary gifts shall be fraudulent unless recorded, which plainly implies that as to subsequent creditors or purchasers they are not fraudulent if recorded.

But I think the authorities are conclusive on this point.

I have already quoted the language of Ch. J. Marshall, in the case of *Saxton* v. *Wheaton*, 8 Wheaton, 229, to the effect that subsequent creditors had no right to complain in case of real estate, the title to which under the general registry laws was required to be put on record. 8 Wheaton, 229.

I refer also to the decision of the court in *Bogard* v. *Gardly*, 4 S. & M. 311, where it was held that the grantor in a deed of trust

continuing in possession, was no evidence of fraud, because by our Statute of Frauds (citing the statute I rely on), the deed having been recorded, his possession is lawful.

But as I have said before, the statutes of Virginia and Tennessee contain the same provision, and so far as I know, it is not to be found in the statute of any other State. In Virginia I cannot find that the question has ever been expressly decided, but in the case of *Chamberlayne* v. *Temple*, 2 Rand. 399, the principle is distinctly recognized, that under the Virginia act, the record of a deed of personal property is sufficient notice to subsequent creditors, where the donor remains in possession.

In Tennessee, the point has been expressly decided in the case of a subsequent purchaser, where it was held that, under the act of Tennessee, precisely similar to ours, a voluntary conveyance is not void as to a subsequent purchaser of personal property, if the conveyance is proved and registered in the time required by law. *Marshal* v. *Booker*, 1 Yerger's Rep. 13.

The point has since that been again decided by the Supreme Court of Tennessee, in the case of *Martin* v. *Olliver*, 7 Humph. 562. In that case subsequent creditor filed a bill to subject personal property. The conveyance was to trustee for wife of grantor, of everything, and provided she should hold free from his future debts; and after the wife's death to go to the husband, if he survived. The deed was recorded, and the court held, "that the deed being required by law to be registered, its registry is constructive notice to all persons of its existence. Those who dealt with the husband after the conveyance had the means of acquiring full knowledge, and are charged with knowledge at their peril, of the true condition and title of the property of which he may be in the ostensible possession, and if they trust him on the faith of such visible ownership, it is the fault of their own indiscretion and want of vigilance, but they cannot, in any sense of the term, be said to be defrauded."

These authorities, in the absence of any to the contrary, and the plain intention of the statute itself, would seem to be conclusive.

The above records, if sustained, will be a conclusive answer to the allegations of the bill as to Taylor's remaining in possession, and the representations which it alleges were made to creditors.

The authorities cited from the South Carolina courts, especially the cases in 1 Nott & McCord, 335, 1 Bailey, 578, and 3 Strobhard, 565, are clear on the point that the father's possession of property of his family, in cases like this, is not evidence of fraud.

But if our view of the statute is correct, it cuts off all discussion on this point, since it provides for the very case of possession by the grantor. And as to the supposed representations, it will be seen that, so far as these complainants are concerned, no representations are charged to have been made by Taylor; but if it were so, in our view of the statute, the creditors being charged with knowledge, and dealing at their peril, the rights of the grantee could not be affected merely by the subsequent fraudulent representations of grantee, since those representations could amount to nothing more than dealing on the faith of the property; and if our argument is sound, it can make no difference that he did so deal, because, in the language of the authorities in Humph., every one so dealing on the faith of such property, dealt at his peril.

One or two of the judgments under which the complainants sue, were obtained in the United States Circuit Court, on the chancery side.

In regard to these, we insist, the complainants have no right to come into a State court of equity. This point has been expressly decided in the only case where, so far as we know, it has arisen. *Tarbell* v. *Griggs*, 3 Paige, 207.

The principle on which courts of equity interfere in cases of this kind is, that the party having exhausted the remedies afforded by the power under which the courts of equity hold their commission, they interfere to prevent a failure of justice, it not being consistent with the dignity or duty of the State that its courts should not, in some form, administer complete justice between parties. But this does not apply to judgments in Federal courts, it not being the province of courts of equity to eke out the insufficient power of foreign jurisdictions. The remedy is thus refused in case of judgments in different State courts, and it makes no difference that the Federal courts sit on our soil, since they are as much foreign in form and in powers of their authority as the other State courts.

On the point of multifariousness, we think the cases, *Bolton* v.

*Spann*, 27 Miss. 237, and *Snodgrass* v. *Andrews*, 30 Miss. 88, are not in point. The attempt here is to subject different property, in the hands of different persons, held by different rights. There is no common cause of action. What has Mr. Taylor's claim to the slaves, under the deed of trust, to do with the other matters which relate entirely to the alleged fraudulent dealings of the firm, and property in the individual possession of its members?

*W. S. Yerger*, on same side, filed an elaborate brief.

Fisher, J., delivered the opinion of the court.

This was a bill filed by the complainants, as judgment creditors of the late firm of Taylor & Richardson, in the Chancery Court of Rankin county, to have a deed executed by the defendant, Taylor, declared void, on the ground of fraud, and to subject the property thereby attempted to be conveyed, to the payment of said judgments.

The defendants below demurred to the bill, and the court sustained the demurrer, from which decree the complainants have prosecuted this appeal.

The main ground of demurrer is, that it appears by the bill that the complainants did not become creditors of the firm of Taylor & Richardson until a year or more after the execution of the deed, and that, although it may have been voluntary, still the complainants have no right to assail it. The law now appears to be well settled that a man may, for the sole purpose of protecting his family against the casualties and accidents of trade, settle his property for their benefit, and that such settlement will be upheld against his subsequent creditors, unless it shall appear that the property was so situated that the community could have been easily misled as to the title of the true owner. The deed being its own exponent in this case, the object of Taylor was manifestly to settle his property on his family; and if this was the whole case, we should feel no hesitation in holding that the court below committed no error in sustaining the demurrer to the bill. The very object of such settlement by a man engaged in commerce, is to prefer his family to those who may thereafter become his creditors, and it may be safely admitted that the design was to protect the

VOL. V.—47

property conveyed against the debts thus to be contracted; for otherwise the conveyance would be simply an idle ceremony. The right to make the settlement carries with it the right to the beneficiaries to hold and enjoy the property against the claims of the donor, or against those who may assert a title through him. The conveyance when executed according to the forms and ceremonies of the law, and made a matter of record, is notice to the world not to trust the donor longer upon the faith of the property conveyed; and while it may have the effect of impairing his credit, it cannot be regarded as a fraud upon those who have ample opportunity to learn his true condition.

But as already remarked, we must go further and ascertain whether this is the case made by the bill. It is in the first place alleged that Richardson was at the date of the copartnership and at the date of the deed, insolvent; that Taylor was then known to be worth about the sum of ten thousand dollars, consisting of the property conveyed by the deed; that the firm had recently purchased a stock of goods, and contracted debts to the amount of about $13,000, and that about $9500 of this sum remained unpaid at the time Taylor executed the deed. It however appears that the larger portion of the goods purchased were in the possession of the firm at this time. The bill then proceeds to charge that the object of the deed was to defraud the creditors of said firm, and also to defraud those who might thereafter become creditors. In order that the true questions may be presented, we will, at the risk of being tedious, quote the allegations of the bill relating to this branch of the case. It alleges "that on the 12th of February, 1852, the defendant Taylor secretly, and with the intent to defraud his then creditors, and also with the view and intent of contracting other debts with complainants and others for large amounts, and to defraud them, and without the knowledge of the defendant Richardson, his partner in business, and without any consideration whatever, made a deed in trust and gift of all his then remaining property and slaves to the defendant Reber, for the use and benefit of himself and wife, the defendant Sarah A. Taylor." A copy of the deed being made an exhibit to the bill, the title of the slaves appears to have been conveyed to Reber for the use of Taylor's wife and children, and he does not appear as a party interested therein. The

bill then proceeds as follows: "That neither the deed, or slaves, or either of them, was ever delivered to the trustee, Reber, but that the said Taylor remained in the quiet possession, use, and control of the same. That immediately after the said partnership was formed, and before the deed was made or recorded, so far as the complainants know or believe, and while complainants had been led by said Taylor & Richardson to believe that all the property of said Taylor was subject to the firm debts of Taylor & Richardson, they, the said Taylor & Richardson, made a commercial arrangement with Wright, Williams & Co., of New Orleans, to assume and pay the existing liabilities, then recently contracted, and to advance to them all amounts of money, or the greater part thereof, necessary to carry on the business, and to give them credit by mercantile recommendation and letters of credit to buy goods of complainants and elsewhere, and said Wright, Williams & Co. were informed and believed at the time of said arrangement, that said Taylor was the owner of said slaves in said deed mentioned, and was the sole responsible party." The bill then proceeds to state that Wright, Williams & Co. paid off the debts existing against the firm at the date of the deed, that they from time to time advanced large sums of money to the firm, that the complainant's debts were in part contracted on the faith of letters given by Wright, Williams & Co., and upon the faith of said slaves. It appears that the debts due to Wright, Williams & Co. have been paid.

These several allegations will be noticed in the order in which they are made by the bill.

It is said that the deed was secretly executed. The bill alleges that it was duly acknowledged and recorded. That which is placed upon the public records of the country, can never be regarded as an act done in secret. The bill therefore simply contradicts itself in this respect.

Again, it is said that Richardson, the other partner, was kept in ignorance of the deed. He is alleged to have been at the time insolvent, and having no individual property liable to the copartnership debts, he could not complain that Taylor had placed himself in the same situation; and creditors could not complain of an injury to Richardson, when he himself could not complain.

Next it is said that Taylor remained in possession of the property.

Supposing the beneficial interest to have passed to his wife and children, and that the deed was properly recorded, Taylor's possession in such case would be regarded as the possession of those having the right, and who under the laws and customs of society constituted his family.

It is again said that the object of the deed was to defraud the existing creditors of the firm, and that it is therefore void as to the subsequent creditors.

It must be admitted that when a deed is shown to be fraudulent as to existing creditors, very high authority can be produced to show that it is likewise void as to subsequent creditors. If, however, we keep in view the principle which lies at the foundation of the authorities holding this doctrine, it is believed that no difficulty will be experienced in arriving at a correct conclusion. It is a familiar rule of the common law, that fraud vitiates every transaction into which it enters, and courts acting with reference to this rule, have frequently declared that conveyances intended in their inception to defraud creditors, and therefore void to all intents and purposes, should be treated as void not only as to existing creditors, but likewise as to subsequent creditors. The transaction being void, neither party, upon the establishment of the fraud, could enforce the contract, but each was left by the court where he had elected to place himself,—beyond the protection of the law. In subjecting the property to the payment of the debts of subsequent creditors, the courts, following this rule, acted upon the principle that as the conveyance was void, the title never in fact passed to the fraudulent vendee, and as the investigation of the fraud in such case also involved the question of ownership of the property, the court, on ascertaining the existence of the fraud, declared what was but a natural consequence of the rule, that the title was still in the fraudulent vendor, and that such title should be made subservient to the claims of creditors. But the true question here is, how far this rule has been modified by the statute on this subject. It declares that such conveyance shall " *only*" be void as against those who are delayed, hindered, or defrauded in the collection of their debts, &c. Hutch. Code, 638. This statute has already been construed to apply only to existing creditors, but if it were now an open question, the language would seem to be too clear to admit of construc-

tion. The conveyance is void as to all who are at the time of its execution in a situation to be injured by it, but valid as to all others. It operates to transfer the title to the property, but transfers it with the incumbrance of the grantor's debts then existing.

It must result from the dominion which every man has over his property, that he may dispose of it in such manner as best accords with his own will and judgment, except in those cases where the law, from considerations of policy, has thought proper to impose limitations upon this right.

And the same may be said with respect to the right to acquire property. The right of disposition by the grantor, and of acquisition by the grantee, both existing without restriction at the same time, it is difficult to conceive upon what principle persons who were not in a situation to be injured by the transaction, can complain of it. Of course, if fraud has intervened, this constitutes an exception to the rule, and this brings us to the material point in this case. It is said that one object of the conveyance was to defraud the complainants, and others, who might become the creditors of the firm after the execution of this deed. The facts from which such fraud may be fairly inferred, are alleged, and their truth being admitted by the demurrer, the complainants, under this state of the case, are of course entitled to relief. It is expressly alleged, that neither the property nor the deed was ever delivered to the trustee, Reber. Whether viewed as a gift, or as a bargain and sale, the title to the property still remained in the debtor, and it is therefore liable to the complainants' judgments. The act of making, acknowledging, and having the deed recorded, would not be sufficient to transfer the title, for the reason that a contract can only be consummated by the act of two persons, or, in technical language, by the assent of two minds, one agreeing to part with, and the other to accept the title. Until the deed was delivered, it was at most but a proposition to convey, which could have been withdrawn at any time before it was accepted by the other party. It is no answer to this position to say, that when a deed has been properly acknowledged and recorded, a delivery will be presumed; for this presumption, like all presumptions, which exist only for the sake of convenience, must yield to facts, when established. The bill alleges that the deed was not delivered, and this allegation

being admitted, it is no longer a question as to what facts will be presumed, but what facts exist to overthrow the presumption. If the rule were once firmly established, that the registry of a deed should be taken as conclusive evidence of a delivery, a man desiring to defraud his creditors would have nothing to do but to describe some fictitious person as a grantee for a valuable consideration, in a deed, acknowledge it, and have it made a matter of record; and this is really the proposition attempted to be established by this allegation of the bill.

Again, it is alleged, that prior to the execution of the deed, an arrangement was made with Wright, Williams & Co., for them to make certain advances to the firm of Taylor & Richardson, and to recommend them to others for credit; and that, upon the faith of the recommendations thus given by Wright, Williams & Co., the complainants gave credit to said firm. Credit given under this state of case, would relate back to the agreement with Wright, Williams & Co., and the complainants' claims would therefore overreach the deed executed by Taylor. Wright, Williams & Co., in giving credit, or in recommending the firm of Taylor & Richardson for credit, were governed by this agreement, and they, Wright, Williams & Co., must be presumed to have investigated the condition of the firm, and of its individual members, before entering into the agreement, and being then satisfied of their condition, they were not bound, while this arrangement regulated the conduct of all the parties, to make other investigations at the time each item of credit was given, or recommended to the firm.

Taylor & Richardson, then, making known their intention or wish to contract debts in future, and actually making their arrangements to do so, must be supposed to have made known their ability to meet such obligations; and using their property as the means of obtaining the agreement from Wright, Williams & Co., and using the agreement as the means of obtaining credit, it would, in substance, be the same as obtaining credit directly upon the faith of the property. Under this view of the case, it falls clearly within the operation of the rule which declares that if the debts were contracted upon the faith of the property, under circumstances clearly showing, as in this case, that the debtor was at the time the true owner, the

conveyance will be regarded as fraudulent and void at the instance of creditors.

Another ground of demurrer which has been argued is, that the bill shows that the judgments sought to be enforced were recovered in the United States Court at Jackson, and that being foreign judgments, as is alleged, the bill cannot be maintained. While a judgment of the United States Court may, in some respects, be regarded as a foreign judgment, it is not so, in the full sense of the term. Such judgments may be enforced by execution against the property of the debtor, like State judgments, and indeed they are in the main regulated by State laws. It is only necessary to maintain the bill, to make the same allegations in regard to these judgments, which would be made in regard to judgments of the State courts, that, in consequence of the fraud, the remedy had become ineffectual by execution at law. We, therefore, do not think this ground of demurrer can prevail.

Decree reversed, demurrer overruled, and cause remanded for answer in sixty days.


HANDY, J., dissented, as follows.

While I agree with the conclusion stated in the opinion of the court upon the demurrer to the bill in this case, I am constrained to dissent from some of the views stated in the opinion.

The bill alleges that on the 12th February, 1852, the defendant Taylor, secretly and with the intent to defraud his then creditors, and also with the view and intention of contracting other debts, with the complainants and others, for large amounts, and to defraud them, and without the knowledge of the defendant Richardson, his partner in business, and without any consideration whatever, made a deed in trust and gift of all his then remaining property and slaves, to the defendant Reber, for the use and benefit of himself and wife, a certified copy of which is exhibited, and made part of the bill, and that Taylor remained in the use and possession of the property, and acted as the owner of it. These allegations, being admitted by the demurrer, must, as the case is now presented, be taken as true.

1. The opinion of the court appears to sanction the idea, that

these allegations, if true, would not be sufficient to condemn the conveyance, because they must be taken in connection with the deed, which is referred to as their basis, and is made a part of the bill; and by reference to the deed it appears that it was duly recorded, and as it was duly recorded, it was no objection to be urged against it by subsequent creditors, that the conveyance was so made and the property so situated as to enable the donor to gain credit on the faith of it, and that, although made with a fraudulent intent, it had the effect to convey the property to the donee, so far as subsequent creditors are concerned.

Admitting that the deed was recorded according to the forms of the law, yet if it was made without valuable consideration, and for the use and benefit of the donor and his family, and with the intent to defraud others who might subsequently be deceived by the use and possession of the property continuing with the donor, and be thereby induced to give credit to him on the faith of the property, I think it unquestionably fraudulent and void under the statute, though it be formally recorded. For the force of the allegation is, that it was made with intent to secure the property to the use of the donor and his family, in fraud of creditors who might contract debts with him on the faith of it, and that the recording was but in furtherance of the same colorable and fraudulent intent. The formal recording of it could, therefore, impart no virtue to it.

2. It is said that the statute declares the conveyance void only as to creditors who are such at the time of its execution, and that it has no application to conveyances with reference to the claims of subsequent creditors.

The substance of the statute of 13 Eliz. chap. 5, of which ours is substantially a transcript, is that all conveyances made with intent to hinder, delay, or defraud the creditors of the donor, shall be taken and held, *only as against his creditors* to be fraudulent and void. No description of creditors is indicated, but the language is general and applies to all creditors whose claims it was the intent of the donor to hinder, delay, or defraud; and its object was to declare all conveyances made with such fraudulent intent, void as to the persons intended to be defrauded. And if anything in the law is to be taken as settled by authority, I think it may be considered

as conclusively settled, that the statute applies as well to subsequent creditors whose claims it was the intent of the donor to defeat, as to creditors who were such at the time of the conveyance.

The only material difference between the operation of the statute upon the two classes of creditors, is, that as to subsisting creditors, the voluntary conveyance is void *per se*, and no further proof is required to avoid it than to show that the debt was a valid, subsisting one at the time of the conveyance; whereas, in the case of subsequent creditors, it is necessary to establish by proof that the conveyance was made with intent to hinder, delay, or defraud such creditors; and every such case depends mainly upon its own circumstances. It is true that there is much difference of opinion in the adjudicated cases, as to what amount of proof and what circumstances, showing the fraudulent intent as to subsequent creditors, will be sufficient to avoid the conveyance; and especially is there much disagreement upon the point, whether the fact that a conveyance was made with intent to defraud subsisting creditors, will be sufficient of itself or in connection with other circumstances, to render it void also as to subsequent creditors. But it is firmly settled that if a conveyance be made with an actual fraudulent intent as to subsequent creditors, it is within the operation of the statute, and is void as to such creditors. *Sexton* v. *Wheaton*, 8 Wheat. 229; *Benton* v. *Jones*, 8 Conn. 186; *Blake* v. *Jones*, 1 Bailey, 142; *Miller* v. *Thompson*, 3 Porter, 196; *Bennett* v. *Bedford Bank*, 11 Mass. 421; *Corby* v. *Ross*, 3 J. J. Marsh. 290; *Ridgway* v. *Underwood*, 4 Wash. C. C. 129; *Madden* v. *Day*, 1 Bailey, 337; *Hutchinson* v. *Kelly*, 1 Robinson Va. 125; *Miller* v. *Miller*, 23 Maine, 22. And the same rule has been repeatedly held by this court. *Bogard* v. *Gardley*, 4 S. & M. 310; *Henry* v. *Fullerton*, 13 Ib. 631; *Vertner* v. *Humphreys*, 14 Ib. 130; *Wells* v. *Treadwell*, 28 Miss. 717.

I think, therefore, that the statute clearly embraces subsequent creditors, and that the allegations of the bill above stated, which are admitted by the demurrer, are sufficient to render the conveyance void as to the appellants, and, therefore, that the demurrer should have been overruled.

A reargument was asked for by the appellees' counsel, upon so much of the opinion of the court as related to the question of the delivery of the deed to the trustee, and to that portion of it which holds that the arrangement made with Wright, Williams & Co., by Taylor & Richardson, brought this case within the Statute of Frauds.    But the reargument was refused.